MORRIS EUROPEAN & AMERICAN EXP. CO. v. UNITED STATES.

(Circuit Court, S. D. New York. March 8, 1898.)

CUSTOMS DUTIES—WORKS OF ART FOR PRESENTATION TO RELIGIOUS SOCIETY.
Plaintiff imported a church altar and reredos for presentation to a church· in New York. It was originally designed by a leading American artist in this style of church architecture. A French artist of reputation made original designs for the angels, and impressed his personality upon the work. *Held*, that it is a "work of art," within the meaning of Act Aug. 27, 1894, par. 686, and entitled to admission free of duty.

This was an appeal by the Morris European & American Express. Company from a decision of the board of general appraisers affirming the action of the collector of the port of New York in respect to the· classification for duty of an imported church altar.

Howard T. Walden, for the importer.
Henry C. Platt, for the United States.

TOWNSEND, District Judge.  In 1896 the plaintiff imported into the port of New York a church altar, including a tomb and reredos, for presentation to the Trinity Episcopal Church at Binghamton, N. Y.  The collector classified it for duty at 30 per cent. ad valorem, as "dressed stone, not specifically provided for," under paragraph 106 of the act of August 27, 1894.  The importer protested, claiming the altar as free, either as a "work of art, imported expressly for presentation to an incorporated religious society," under paragraph 686 of said act, or as "statuary specially imported in good faith for the use of a society established for religious purposes," under paragraphs 585 and 603 of said act, or dutiable at 20 per cent., as a nonenumerated article, under section 3 of said act.  The board of general appraisers sustained the classification of the collector, and the importer appeals.

The parties are at issue chiefly upon the question as to whether this altar and reredos is a work of art.  The attorney for the United States relies upon the testimony of certain distinguished sculptors.  Thus Mr. St. Gaudens says:

"My reply is that it is not a work of art, but I think this reply needs qualification.  It is difficult to define a work of art, or say just where a work of art begins or where it ends.  In a large sense, everything from the commonest design on a cheap cast-iron stove to the frieze of the Parthenon can be included in the expression 'works of art.'  There is no established line.  Every man draws his own line.  The nearest I can get to it is that what is generally understood by artists as a work of art purely is only such as is produced by a professional artist in his own studio, either wholly by himself or with such assistance as he needs, under his own immediate direction and supervision.  According to my understanding, this is distinctly and only what was meant by the words 'works of art' in the phraseology of the law, and was the intention of the framers of the law."

Other distinguished sculptors, among them Messrs. J. Q. A. Ward, Hartley, and Donaldson, testifying on behalf of the United States, admitted that, if it was not a work of art in sculpture, it was a work of art in architecture, or in the broad sense.  It would be presumptuous to question the correctness of the views of such eminent artists as to what constitutes a work of art in the strict and technical understanding of sculptors, who exclude architectural works from their definition.  But when they undertook to determine "what was meant by the words 'works of art' in the phraseology of the law, and was the intention of the framers of the law," they manifestly overlooked the well-settled rule in the interpretation of the tariff acts that words used therein are to be understood in the sense which they bear in the common speech of the people of this country.  In that sense the altar and reredos was a work of art.  Several of the eminent sculptors already referred to say, in effect, that it was a work of art in the commonly accepted meaning of the phrase.  As Mr. Ruckstuhl, another sculptor, says:  "From my point of view, any human work made with the specific purpose of stirring human emotions is a work of art, and I consider that work comes under that head."  Mr. Ward says:  "Art is the work of a human being, in plastic material or color, or something to render a sentiment, to imitate a form, or something of that kind, which does not grow on trees, which is not in nature."

If the proportions are sufficiently symmetrical, and the lines so far

free from faults as to stir the emotions of people, the work is to them a work of art. Whether it is good or bad art is a mere question of quality. This work was originally designed by one of the leading American artists in this style of church architecture. An artist of reputation in France made original designs for the angels, and imposed his personality upon the work. The specifications and detail drawings show this fact beyond question. Whether the design and construction show such originality of conception and perfection of execution as to mark it as the work of a genius is not the question herein. The work as an entirety confessedly falls within the accepted definition of a work of art. It represents the handiwork of an artist; it embodies something more than the mere labor of an artisan; it is "a skillful production of the beautiful in visible form." It is unnecessary to consider the contention that architectural works are not works of art, for writers such as Mr. Ruskin, and all the witnesses herein, refuse to impose a limitation which would exclude the famous churches, triumphal gates, and graceful towers of Europe. The further contention that it cannot be a work of art if adapted to a useful purpose would exclude the Ghiberti doors of Florence, or the fountains of Paris and Versailles. These conclusions render it unnecessary to consider the further claims of the importer that the altar, at least, is statuary, and that neither altar nor reredos is dressed stone. The decision of the board of general appraisers is reversed.