UNITED STATES v. ECCLESIASTICAL ART WORKS.

(Circuit Court, S. D. New York. December 16, 1904.)

No. 3,550.

CUSTOMS DUTIES—CLASSIFICATION—MARBLE ALTARS—WORKS OF ART.

Held, that the provision in paragraph 703, Tariff Act July 24, 1897, c. 11, § 2, Free List, 30 Stat. 203 [U. S. Comp. St. 1901, p. 1690], for "works of art" intended for presentation to religious societies, includes certain marble altars imported for presentation to a church, which were carved by a professional sculptor and were of a value of $1,800.

On Application for Review of a Decision of the Board of United States General Appraisers.

The decision below (G. A. 5,666, T. D. 25,256) reversed the assessment of duty by the collector of customs at the port of New York on certain imported articles. The questions involved in the case appear from the opinion of the Board of General Appraisers, which reads as follows:

Waite, General Appraiser. In these cases certain marble altars imported for presentation to the Church of Our Mother of Sorrows, Philadelphia, Pa., were assessed for duty as manufactures of marble at 50 per cent. ad valorem, under paragraph 115, Tariff Act July 24, 1897, c. 11, § 1, Schedule B, 30 Stat. 159 [U. S. Comp. St. 1901, p. 1636]. The goods are claimed to be free under paragraph 703 of the act, § 2, Free List, 30 Stat. 203 [U. S. Comp. St. 1901, p. 1690], which reads as follows: "703. Works of art, the production of American artists residing temporarily abroad, or other works of art, including pictorial paintings on glass, imported expressly for presentation to a national institution, or to any state or municipal corporation, or incorporated religious society, college, or other public institution, except stained or painted window glass, or stained or painted glass windows; but such exemption shall be subject to such regulations as the Secretary of the Treasury may prescribe." The importers duly applied to the Secretary of the Treasury for free entry of the articles in accordance with the treasury regulations upon the subject (article

569, Cust. Regs. 1899), their application being denied upon the ground that the altars were not works of art. The sole question presented for the board's decision therefore is whether or not the altars are works of art within the meaning of said paragraph 703.

The importations consist of a main altar, two side altars, and an altar railing, their total value being 9,323 lira ($1,800). One Martino Barsanti, in affidavits made before the United States consular agent at Carrara, Italy, declares that the work in question was executed under his personal supervision, and finished by him, and that he has been a sculptor by profession for twenty-one years, being a graduate of the School of Fine Arts at Pietrasanta, Italy. Accompanying these declarations is a certificate by the president of the Municipal Institute of Fine Arts at Pietrasanta, to the effect that Barsanti took a regular course in the section of sculpture in that institution in the years 1875 to 1885, receiving the highest honors, and is a member of the academical board. The appraiser's report describing the importations states that "they are produced from original designs made in this country and executed abroad, in pure white Carrara marble, and carved in the purest Byzantine of the thirteenth and fourteenth centuries, the handwork largely predominating in value throughout," and that "they are believed to fall within the provisions of paragraph 703." The design and sculptural work of the altars, as shown by a photograph, reveal considerable artistic skill in execution. Forming our judgment without regard to the highest technical standards, we do not hesitate to characterize the work as being, upon the whole, an impressive and highly ornamental piece of church architecture. No distinction in principle is apparent between this case and Morris European and American Express Company v. U. S. (C. C.) 85 Fed. 964, where a marble altar valued at $404 was held to be free under paragraph 686 of the tariff act of 1894 (Act Aug. 27, 1894, c. 349, § 2, Free List), which corresponds in its relevant provisions to paragraph 703 of the present act. That decision reversed the board's decision in G. A. 4,023, T. D. 18,625. Judge Townsend's observations are, we think, conclusive upon the point in issue. He said: "Distinguished sculptors, among them Messrs. J. Q. A. Ward, Hartley, and Donaldson, testifying on behalf of the United States, admitted that if it [the altar] was not a work of art in sculpture it was a work of art in architecture, or in the broad sense. It would be presumptuous to question the correctness of the views of such eminent artists as to what constitutes a work of art in the strict and technical understanding of sculptors, who exclude architectural works from their definition. But when they undertook to determine what was meant by the words 'works of art' in the phraseology of the law, and was the intention of the framers of the law, they manifestly overlooked the well-settled rule in the interpretation of the tariff acts that words used therein are to be understood in the sense which they bear in the common speech of the people of this country. In that sense the altar and reredos was a work of art. Several of the eminent sculptors already referred to say, in effect, that it was a work of art in the commonly accepted meaning of the phrase. As Mr. Ruckstuhl, another sculptor, says, 'From my point of view, any human work made with a specific purpose of stirring human emotions is a work of art, and I consider that work comes under that head.' Mr. Ward says, 'Art is the work of a human being in plastic material or color, or something to render a sentiment, to imitate a form, or something of that kind, which does not grow on trees, which is not in nature.' If the proportions are sufficiently symmetrical, and the lines so far free from faults as to stir the emotions of people, the work is to them a work of art. Whether it is good or bad art is a mere question of quality. This work was originally designed by one of the leading American artists in this style of church architecture. An artist of reputation in France made original designs for the angels and imposed his personality upon the work. The specifications and detail drawings show this fact beyond question. Whether the design and construction show such originality of conception and perfection of execution as to mark it as the work of a genius is not the question herein. The work as an entirety confessedly falls within the accepted definition of a work of art. It represents the handiwork of an artist; it embodies something more than the mere labor of an artisan; it is a skillful production of the beautiful in visible form. It

is unnecessary to consider the contention that architectural works of art are not works of art, for writers such as Mr. Ruskin, and all witnesses herein, refuse to impose a limitation which would exclude the famous churches, triumphal gates, and graceful towers of Europe. The further contention that it cannot be a work of art if adapted to a useful purpose would exclude the Ghiberti doors of Florence or the fountains of Paris and Versailles." As further illustrating the liberality of the courts in construing the various provisions of the tariff relating to works of art, reference should be made to the case In re Hempstead (C. C.) 95 Fed. 969, where certain embroidered silk banners of artistic appearance were held to be free as "works of art," under paragraph 686 of the act of 1894, and to the trend of the decisions dealing with marble statuary, cast statuary, and paintings. Without reviewing in detail these authorities, which are cited below, it may be stated that the courts, up to that of last resort, have refused to construe the various tariff provisions covering sculpture and paintings as limited to works of genius, or even to those possessing a high degree of artistic merit. Townsend v. U. S. (C. C.) 108 Fed. 801, affirmed 113 Fed. 442, 51 C. C. A. 276; Benziger v. U. S., 192 U. S. 38, 24 Sup. Ct. 189, 48 L. Ed. 331; Tiffany v. U. S. (C. C.) 66 Fed. 736; United States v. China & Japan Trading Co., 58 Fed. 690, 7 C. C. A. 433; White v. U. S. (C. C.) 113 Fed. 855.

We have not overlooked the fact that the Supreme Court, construing the provision in the tariff act of October 1, 1890, c. 1244, § 2, Free List, par. 757, 26 Stat. 611, corresponding to paragraph 703 of the present act, intimated that its privileges extended only to the "fine arts, properly so called, intended solely for ornamental purposes, and including paintings in oil and water, upon canvas, plaster, or other material, and original statuary of marble, stone, or bronze" (U. S. v. Perry, 146 U. S. 71, 13 Sup. Ct. 26, 36 L. Ed. 890); but the court did not in terms exclude objects of architectural art from the class of the fine arts; nor did it, in its familiar analysis of works of art embodied in that decision, expressly include architectural works in any other class. Furthermore, the court did not undertake to set any standard of artistic excellence to which articles within the domain of the fine arts must attain. We do not believe that there is any necessary conflict between the construction placed upon the provision in the Perry Case and the construction given it by the authorities previously cited, which we deem controlling in this case. Note, also, In re Vonnegut & Bohn, G. A. 5,609, T. D. 25,104.

For these reasons the protests are sustained, and the collector's decision reversed, in each case.

Henry A. Wise, Asst. U. S. Atty.
Mayer & Gilbert, for importers.


PLATT, District Judge. Decision of the Board of General Appraisers affirmed.