## REARDON *v.* UNITED STATES (No. 2063).[1]

1. SCULPTURES—STATUARY.

 The provision of paragraph 652, tariff act of 1913, for "original sculptures or statuary" means representations of natural objects. A set of church altars (one main and two side) of the conventional Gothic type is not embraced within it.

2. ARTICLES OF UTILITY—CHURCH ALTARS.

 The provision of paragraph 652, tariff act of 1913, excluding articles of utility from the operation of the paragraph excludes church altars, since they are articles of utility.

3. "WORKS OF ART."

 The provision of paragraphs 376, 654, and 655, tariff act of 1913, for "works of art" refers to the *free* rather than the *dependent* fine arts; and church altars are not within the expression.

4. CHURCH ALTARS—MANUFACTURES OF MARBLE.

 A set of marble church altars (two side and one main) of the conventional Gothic type, imported in a knock-down condition, is not admissible free of duty as "sculpture or statuary" under paragraph 652, tariff act of 1913, or as "works of art" under paragraph 654 or 655, or dutiable as "works of art" under paragraph 376, but dutiable as manufactures of marble under paragraph 98.

## United States Court of Customs Appeals, January 13, 1922.

APPEAL from Board of United States General Appraisers, G. A. 8360 (T. D. 38465).

[Affirmed.]

*Frank L. Lawrence (J. Wiseman MacDonald, William P. Boland,* and *Thomas M. Lane* of counsel) for appellant.

*William W. Hoppin,* Assistant Attorney General (*John J. Mulvaney,* special attorney, of counsel), for the United States.

[Oral argument October 28, 1921, by Mr. Lane and Mr. Hoppin.]

Before DE VRIES, Presiding Judge, and SMITH, BARBER, and MARTIN, Associate Judges.

MARTIN, Judge, delivered the opinion of the court:

The issue in this case relates to the tariff status of certain marbles which were imported from Italy for the construction of an altar in a Catholic church in this country.

The appellant is Father Reardon, who at the time now in question was pastor of St. Anthony's church located at Long Beach, Calif. In the year 1913 the appellant and his congregation commenced the building of a church edifice for the parish, their purpose of course contemplating also the erection of an altar therein. It was desired that this should be as beautiful and imposing as possible, and since the congregation was not wealthy the pastor sought for special donations toward the cost of the altar before deciding upon its design and expense. He succeeded in obtaining a pledge from one parish-

---

[1] T. D. 38992.

ioner of $6,000, from another $2,000, and $2,000 from a third. It may be said in passing that the donors never fully paid the sums so promised by them, but at the time of the pledge they fully intended to do so, and it was contemplated that the amount thereof would be sufficient to procure an acceptable main altar and two side altars for the new church. The pastor thereupon procured designs from various establishments which were engaged in the business of con- structing church altars in this country. The designs were drawn in accordance with certain suggestions and directions which the pastor himself furnished, and finally a design submitted by the E. Hackner Co., of La Crosse, Wis., was accepted, after it had been somewhat altered to suit the pastor's wishes. A written contract was thereupon entered into between St. Anthony's congregation and the company whereby the latter agreed to furnish for the congrega- tion a main altar and two side altars according to the accepted design, to be composed of Italian carrara white marble, the main altar to be 15 by 26 feet, including a three-step platform, the side altars to be 6 feet 6 inches by 16 feet, including one step for each platform, no statuary however to be included, and all to be set up by competent men and marble setters in the new church building. The price of the altars in full was to be $10,000 payable in stipulated installments, and it was a term of the contract that they were to be "imported free of duty."

In the performance of this contract the E. Hackner Co. ordered the marble pieces which composed the present importations. They came from Martino Barsanti of Pietrasanta, Italy, and were invoiced to "Rev. J. A. Reardon, of Long Beach (Calif.) through the E. Hackner Co., of La Crosse (Wis.)." Altogether there were 71 boxes of marble containing many hundreds of separate pieces, all fitted and prepared to enter into the construction of the three altars according to the terms of the existing contract. It may be noted that certain slight alterations in dimensions were found necessary when the altars came to be erected, but that fact bears no relation to the present issue.

The importation was entered by Father Reardon at the port of Los Angeles; the entry was made upon the invoice above mentioned with a claim that the merchandise should be admitted free, upon the ground that it was imported expressly for presentation to the above- named church. Certain certificates in support of this claim were filed concurrently with the entry, and subsequently others were filed for the same purpose.

The collector, however, denied the claim for free entry and as- sessed duty at the rate of 45 per cent ad valorem, under the pro- vision for articles manufactured of marble in paragraph 98 of the tariff act of 1913.

Thereupon a protest was filed by Father Reardon, claiming free entry for the merchandise under paragraphs 652, 654, and 655, severally, or alternatively an assessment thereon of only 15 per cent ad valorem under paragraph 376 of the act. Copies of these paragraphs appear immediately below.

The protest was submitted upon evidence to the Board of General Appraisers, who overruled it, from which decision the protestant now appeals.

The following is a copy of the relevant parts of paragraph 98 under which the merchandise was assessed, and also per contra of paragraphs 652, 654, and 655 of the free list, and paragraph 376 of the dutiable list, upon which the various claims of the protest were founded:

98. Marble * * * wholly or partly manufactured into monuments, benches, vases, and other articles, * * * 45 per centum ad valorem.

376. Works of art, including paintings in oil or water colors, pastels, pen and ink drawings, or copies, replicas, or reproductions of any of the same, statuary, sculptures, or copies, replicas or reproductions thereof, and etchings and engravings, not specially provided for in this section, 15 per centum ad valorem.

(Free list.)

652. * * * original sculptures or statuary * * * ; but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round or in relief, * * * or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, * * * made as the professional productions of sculptors only; and the words * * * "sculpture" and "statuary" as used in this paragraph shall not be understood to include any articles of utility, nor such as are made wholly or in part by * * * any other mechanical process; * * *.

654. Works of art * * * imported in good faith for exhibition at a fixed place by any State or by any society or institution established for the encouragement of the arts, science, agriculture, or education * * * but bond shall be given under such rules and regulations as the Secretary of the Treasury may prescribe for the payment of lawful duties which may accrue should any of the articles aforesaid be sold, transferred, or used contrary to this provision * * *.

655. Works of art, * * * imported expressly for presentation to an incorporated religious society * * * but such exemption shall be subject to such regulations as the Secretary of the Treasury may prescribe.

It thus appears that the merchandise was assessed with duty at the rate of 45 per cent ad valorem as manufactures of marble under paragraph 98; whereas appellant claims free entry for it as original sculptures or statuary under paragraph 652, or as works of art imported for institutions established for the encouragement of education under paragraph 654, or as works of art imported expressly for presentation to a religious society under paragraph 655; and in case of an adverse ruling on these claims appellant contends for an assessment of only 15 per cent ad valorem upon the merchandise as works of art under paragraph 376.

As above stated, the present importations comprise many hundreds of separate pieces, all of them elaborated and prepared to serve as

parts in the erection of the contemplated altars. It will be observed, however, that both the collector and the importer have treated the importations as entireties without attempting to distinguish between the separate marbles composing them. Accordingly, in the invoice and entry the merchandise was described as a main altar and two side altars, while in the protest they were described simply as church altars. It is apparently conceded that the importations contain substantially all of the marble parts required for setting up the proposed altars, although the contract refers also to other materials and brickwork, masonry work, etc., which necessarily would have to be supplied in this country. The question in hand accordingly deals with the altars as entireties, and it becomes necessary, therefore, to inquire how far these may answer to the various tariff enumerations upon which the protest is founded.

The first claim presented by the protest is that the altars respond to the description of "original sculptures or statuary" within paragraph 652, wherein it is prescribed that those terms shall be understood to include professional productions of sculptors only, whether in round or in relief, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, made as the professional productions of sculptors only, and not to include any articles of utility nor such as are made wholly or in part by any mechanical process.

The Standard Dictionary (1916) defines statuary to be statues, collectively considered; statues are defined by the same authority as plastic work representing a human or animal figure, generally in marble or bronze; especially, such a work, nearly life-size or larger, as distinguished from statuette, and preserving the proportions in all directions as distinguished from relief. The same dictionary primarily defines sculpture as the art of fashioning figures out of stone or other solid material by carving or chiseling, or of modeling them in some plastic substance, for subsequent reproduction by carving or by casting as in bronze. It is said, furthermore, to be that free branch of the fine arts that imitates natural objects, chiefly the human body, by representing in solid form their true proportions, either in all three dimensions or in those of length and breadth only. It is either (1) sculpture proper, where the proportions of all three dimensions are reproduced, or relief, where that of thickness or depth is relatively reduced.

The foregoing definitions have been adopted with approval by this court in former decisions (see United States v. Olivotti & Co., 7 Ct Cust. Appls., 46; T. D. 36309, and cases cited), and a mere reference to them seems to be a sufficient answer to the claim that the altars are either sculptures or statuary. A photograph of the main altar and a print of the two side altars are in evidence in the case. From them it appears that the altars conform to the conventional type of

gothic church altars, with a table surmounted by spires and crosses, with panels, tabernacles and columns, and decorated with scroll and tracery work and other similar ornamentation. There are also steps of ordinary construction leading up to the altar platform. No imitations or representations of natural objects or human or animal forms are carved upon the altars, with the single exception of a lamb, upon the front of the altar table. As entireties they are not imitations of any distinctive object at all, but are quasi architectural edifices. Nor are they "in round or relief," nor "cut, carved, or otherwise wrought by hand from the solid block or mass of marble," nor can it properly be said that altars so designed, ordered, and constructed are the "original" and "professional productions of sculptors only." It is claimed that Martino Barsanti is a professional sculptor, but it must be remembered that the design for these altars was worked out by Father Reardon and the members of the constructing company, none of whom, so far as we know, claims to be a professional sculptor. It is not improper, furthermore, to note that the written contract itself expressly stipulates that no statuary is included therein.

Moreover, we think that the altars are excluded from the operation of paragraph 652, because of the proviso that the words "sculpture" and "statuary" as used therein "shall not be understood to include any articles of utility." It is of course well known that the altars of a Catholic church serve an all-important use and function in the religious observances held therein. They are essential parts of the church equipment, and accordingly they possess the quality of utility. In fact that quality gives the present articles almost their sole value, since they would be little more than waste stones if removed from their position of service in the church. Nor are they any the less useful as altars because of their cost and their beautiful and artistic adornment, for they serve their religious uses none the less effectively on that account. In that particular they differ in character from the article which was involved in United States *v.* Baumgarten & Co. (2 Ct. Cust. Appls., 321; T. D. 32052). The vase in question in that case served as a mere foundation for the creative work which was imposed upon it by the artist; and it no longer possessed any real utility for the ordinary and practical purposes of a vase. This statement applies similarly to the painted fans involved in Tiffany *v.* United States (66 Fed., 736), and to the paintings upon wood, as imported, in White *v.* United States (113 Fed., 855).

We conclude therefore that the altars were not entitled to free entry as sculptures or statuary under paragraph 652.

The protest next includes a claim for free entry of the merchandise under paragraph 654 as works of art imported in good faith for exhibition by an institution established for the encouragement of

education; also a claim for its free entry under paragraph 655 as works of art imported expressly for presentation to an incorporated religious society; together with an alternative claim for its assessment at the rate of 15 per cent ad valorem under paragraph 376, in event the foregoing claims for free entry should be overruled by the court.

It will at once be noticed that the importations can not be classified under any of the three paragraphs last cited, unless first they be held to be "works of art" within the purview thereof. The question therefore arises whether the altars answer to the legislative description of works of art within the paragraphs thus cited.

It may be difficult to formulate an exact definition, at the same time comprehensive and exclusive, of the term "works of art." In a reported case, T. D. 18625 (G. A. 4023), a witness is quoted as saying: "It is difficult to define a work of art, or say just where a work of art begins and where it ends. In a large sense, everything from the commonest design on a cheap cast-iron stove to the frieze of the Parthenon can be included in the expression 'work of art.' There is no established line. Every man draws his own line." On the other hand, the Standard Dictionary (1916) says:

The fine arts may be classed in general as (1) the *free*, whose object is to create form for its own sake, embracing painting, engraving, sculpture, music and poetry; and (2) the *dependent*, whose object is to create form that shall minister to some utility, embracing architecture, landscape gardening, decoration, ceramics, glass making, the goldsmith's art, and other applications of the principle of artistic construction and arrangement.

We think that for tariff purposes the definition of the free fine arts above quoted comes nearest to the intent with which Congress employed the phrase in question. And that view was expressed by this court by Judge Smith in United States v. Olivotti & Co. (7 Ct. Cust. Appls., 46, 48; T. D. 36309), as follows:

Finding, as we do, that the font is not sculpture, the next question which arises is, Can it, because of its beauty and artistic character, be classified as a work of art within the meaning of paragraph 376? We think not. In our opinion, the expression "works of art" as used in 376 was not designed by Congress to cover the whole range of the beautiful and artistic, but only those productions of the artists which are something more than ornamental or decorative and which may be properly ranked as examples of the free fine arts, or possibly that class only of the fine arts imitative of natural objects as the artist sees them, and appealing to the emotions through the eye alone. The potter, the glassmaker, the goldsmith, the weaver, the needlewoman, the lacemaker, the woodworker, the jeweler, all produce things which are both artistic and beautiful. It can hardly be seriously contended, however, that it is the legislative purpose to include such things, beautiful and artistic though they may be, in a provision which, as shown by its history and the enumerations therein contained, was intended to favor that particular kind of art of which painting and sculpture are the types. See Lazarus v. United States (2 Ct. Cust. Appls., 508, 509; T. D. 32347); United States v. Downing (6 Ct. Cust. Appls., 545; T. D. 36197).

That everything artistic and beautiful can not be classed as fine arts was well established in United States *v.* Perry, which involved the classification of painted glass windows on which were represented by artists of superior merit pictures of the saints and other biblical subjects.   In that case it was held by the Supreme Court that the windows were not paintings and that, although they were artistic in the sense·that they were beautiful, they were representative of the decorative and industrial rather than of the fine arts.—United States *v.* Perry (146 U. S., 71, 74).

The foregoing observations apply directly to the altars now in question.   It is true that they were artistically designed and constructed, but their adornment belonged to the decorative and industrial rather than the fine arts.   They are essentially the product of builders and ornamentalists rather than artists, for, after all, they are structures of church equipment for use in religious worship and are not esthetic objects created or produced by artists to appeal to the emotions through the eye alone.   Such objects are not "works of art" within the sense of the statute.   In reaching this conclusion we have not overlooked the testimony of the witnesses Stone and Anker, nor the statement of the exporter, but we consider the character of the merchandise to be obvious.

In the board's decision various questions were passed upon in addition to those just considered.   One of these related to certain testimony which had been taken in a reappraisement proceeding affecting the same importation.   The Government sought to introduce the record of this testimony in the present case, but the board refused to admit it.   Furthermore under paragraph 654 the board held that the church in question was not an institution "established for the encouragement of * * * education," and that the altars had not been imported for "exhibition" therein, within the intent of the paragraph; the board also found that the bond required by the paragraph had not been given by the importer.   And under paragraph 655 the board found upon the testimony that the altars had not been "imported for presentation to * * * an incorporated religious society."     It was not denied that the church was such a society within the sense of the statute, but it was held that the actual importation of the merchandise was effected by the E. Hackner Co. for the purpose of performing its contract.   The board held also that the regulations established by the department under the latter paragraph had not been complied with by the importer.   We do not disagree with the board in respect to any of these conclusions, but we have not discussed them in detail since · we find the merchandise to be foreign to the primary classifications relied upon in the protest.

It must be conceded that our conclusion in this case is inconsistent with several former decisions of other courts, notably Morris European & American Express Co. *v.* United States (85 Fed., 964), and United States *v.* Ecclesiastical Art Works (139 Fed., 798, affirmed

142 Fed., 1038), and other authorities cited in the appellant's brief. But we believe that it is sustained by United States *v*. Halle (6 Ct. Cust. Appls., 543; T. D. 36196); United States *v*. Downing (6 id., 545; T. D. 36197); United States *v*. Olivotti (7 id., 46; T. D. 36309), and United States *v*. Perry (146 U. S., 71).

In accordance with the views above presented the decision of the board is *affirmed*.