(C. D. 711)

DR. OIDTMANN STUDIOS, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 10, 1942)

*Lane & Wallace* (*William H. Fox* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil* and *Alfred A. Taylor, Jr.*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: The merchandise in question in this case consists of certain structural parts of a main altar and two side altars imported for installation in the St. Louis Cathedral in New Orleans, La. Entry was made under the duty-free provisions of paragraph 1774 of the Tariff Act of 1930. The collector, however, determined that said merchandise was not within the exemption provided for in said paragraph and assessed duty thereon under the provisions of paragraph 232 (d) at 50 per centum ad valorem as articles of marble. The plaintiff claims that the altars and parts were imported in good faith for presentation without charge to, and for the use of, a corporation organized and operated exclusively for religious purposes, and come directly within the exemption provided for in paragraph 1774.

There is no question arising as to the classification of the articles under paragraph 232 in the event paragraph 1774 is found inapplicable. Paragraph 1774 of the free list grants an exemption from otherwise dutiable merchandise in language following:

PAR. 1774. Altars, pulpits, communion tables, baptismal fonts, shrines, or parts of any of the foregoing, and statuary (except casts of plaster of Paris, or of compositions of paper or papier-mâché), *imported in good faith for presentation (without charge) to, and for the use of, any corporation or association organized and operated exclusively for religious purposes.* [Italics not quoted.]

The Government submitted its evidence before the presentation of plaintiff's evidence, the Reverend Charles B. Anderson testifying to the following facts.

Father Anderson testified that he is a duly ordained priest of St. Vincent de Paul Catholic Church; that the archbishop of the diocese

advised him that the main altar of St. Louis Cathedral needed considerable repairs and the side altars were old and needed replacing and that he would appreciate a donation; that Father Anderson made the donation with the proviso that a tablet be erected in honor of Bishop Laval, which was agreed to; that subsequently he was told that the amount necessary would be $5,500; that the witness then made arrangements for a check to be drawn payable to the St. Louis Cathedral which he gave to the pastor of the cathedral; that later he was asked to accompany the pastor to the customhouse where he signed affidavits stating that he had donated these altars and parts to the cathedral; that the witness simply made the donation requested and had no knowledge concerning the importation of the articles until called upon to go to the customhouse to sign the affidavits.

The witness further testified that he signed the note in favor of his bank with the permission of Archbishop Rummel, the customary procedure of borrowing money for church purposes; that he knew the money was going to be used specifically for the purchase of the altars and parts in question but he could not recall whether at the time the donation was sought he had been advised that they were to be imported although he thought possibly the archbishop so advised him; and that he handed the check covering the donation to the pastor of the church.

A stipulation of fact was entered into between the plaintiff and defendant as follows:

That the items imported in this shipment (except 1 Marble Credence Table found in excess and appraised at $72. net) which were assessed with duty at 50% under Par. 232 (d), Tariff Act of 1930, consist of the following:

a. The items in Cases 54/56 consist of certain pieces, fragments, segments, or sections, which are structural parts of a main altar; and

b. The items in Cases 57/66 consist of two complete Side Altars.

That all of the items in said Cases 54/56 were physically attached to and became integral, constituent, and component parts of the main altar in the St. Louis Cathedral, in New Orleans, Louisiana.

That the two complete side altars in said Cases 57/66 also were installed in the said St. Louis Cathedral.

That the St. Louis Cathedral is a corporation organized and operated exclusively for religious purposes.

That all of the said items were the subject of two contracts between Dr. Oidtmann Studios Inc., and the congregation of the St. Louis Cathedral, entered into on May 16, 1938, and May 22, 1938, photostatic copies of which have been filed with the entry papers in this case.

That thereafter a letter of presentation of the said structural parts of the main altar and the said two side altars to the St. Louis Cathedral, dated July 22, 1938, and signed by Rev. C. B. Anderson was filed with the entry papers.

That a letter of acceptance dated July 22, 1938, covering all of said items signed by Pastor Rev. Charles Serodes, O. M. I. on behalf of the St. Louis Cathedral was also filed with the entry papers.

That the purchase price of all of said items, and all costs and charges incident to their installation were paid to the Dr. Oidtmann Studios Inc., by the Treasurer

of the St. Louis Cathedral, with funds received from said Rev. C. B. Anderson for that express purpose.

That Rev. C. B. Anderson is neither employed by nor connected with the St. Louis Cathedral, but is connected with St. Vincent ʻde Paul Church, in New Orleans, Louisiana.

That Customs Form 3331, duly executed by the importer herein, was filed with the collector prior to liquidation of the entry, and also is attached to the entry papers.

That said photostatic copies of said contracts, said letters of presentation and acceptance, and said Customs Form 3331, may be received in evidence herein.

That the copy of a letter to the Appraiser of Merchandise at New Orleans, Louisiana, dated July 8, 1939, signed by W. J. Harmon, Customs Agent in charge, which is attached to the entry papers, and Exhibits 1 and 2 for identification, may also be received in evidence herein.

It is further stipulated and agreed that the above protest may be deemed to be submitted for decision upon this stipulation and the record as previously made, and that subject to the approval of the court counsel for the plaintiff may have 30 days after notice of the date of filing of this stipulation in which to file a brief, and that counsel for the defendant may have 30 days thereafter in which to file a brief.

The right to amend the above protest is hereby waived, and said protest is abandoned as to the Credence Table above mentioned.

The documentary evidence before us discloses that the pastor of the St. Louis Cathedral entered into two contracts with the Oidtmann Studios, Inc., on May 16 and 22, 1938, to supply the materials and perform the required installations. The contracts do not disclose that the articles were to be imported or that the same were to be presented as a gift to the church. The contracts did not cover, nor did the price include, the foundation for the side altars, the same to be executed by a local contractor according to plans supplied by the Oidtmann Studios, Inc. However, the contract price of the altars and parts was based on the free entry of such articles by reason of the same being presented to the church by a donor. The assistant vice president of the American Bank & Trust Co. certified that a check of the Reverend C. B. Anderson was drawn on said bank in the sum of $5,500, payable to the order of the St. Louis Cathedral, and that the same was paid on September 15, 1938, and charged to the checking account of Reverend C. B. Anderson. The letters of donation and acceptance were in proper order and properly filed in compliance with the regulations of the Secretary of the Treasury. Inasmuch as the collector ascertained from his investigation that the donee had entered into contracts with the Oidtmann Studios, Inc., for the installation of said altars and parts prior to the time donations were sought by the church of the donor herein, and the donor was not aware that the articles were to be imported and was not connected with the importation in any manner, he determined that the exemption granted in paragraph 1774 was not applicable and accordingly assessed duty thereon.

The plaintiff contends that free entry under paragraph 1774 is not precluded because the donee entered into contracts for the installation of the new side altars and changes to the main altar before any pledge of a donation was obtained for such purpose or had been received; that the money was received and used for the purpose of paying the contractor for the materials and labor; that the altars and parts including the cost of installation were in fact without cost to the cathedral; and that such articles had been imported in good faith for presentation without charge to the St. Louis Cathedral and come directly within the exemption contemplated by paragraph 1774.

Counsel for the Government contends that to come within the exemption of paragraph 1774 it must appear that the articles were imported with the intention of making a presentation thereof to a religious corporation; that such intention be an essential feature of the importation is implicit in the use in said paragraph of the words "imported in good faith for presentation"; that to come within the meaning of the language, first, the intention to bestow the articles should be expressed before the importation; second, the donor should in some way be responsible for the importation in that he directs the contractor to make such importation, or that he should be consulted relative to the purchase from abroad and that he should be conversant with the facts of purchase.

Plaintiff cites and distinguishes the case of *Rev. John T. Hill* v. *United States*, T. D. 44847, where the pastor of the church entered into a contract wherein the contractor undertook to provide all the materials and perform all the work for the erection of certain altars and railings. The sum to be paid by the church for such services was $8,600. Several months later the Altar Society of the church agreed to donate the said altars and communion rail complete. The evidence established that the Altar Society did not have the necessary funds to make such a donation and whatever money contributed by the society, which did not exceed $2,000, was placed in a general fund to be expended by the pastor at his discretion and was not dedicated to any particular purpose. The court held that the altars, etc., were not imported for presentation under authority of *Reardon* v. *United States*, 11 Ct. Cust. Appls. 233, T. D. 38992, stating:

There may be a technical distinction between presenting an altar and presenting the money with which to purchase an altar, but there is no practical difference. If this were the situation here we should be inclined to hold in favor of the plaintiff. We do not believe that such a situation existed. The donors could not give what they never possessed. There is a vast difference between a promise to make a gift and a gift.

In the *Reardon* case, *supra*, one of the questions before the court was whether certain church altars were entitled to free entry under paragraph 655, Tariff Act of 1913, as "Works of art, * * * im-

ported expressly for presentation to an incorporated religious society * * * ." The pastor of the church there sought for special donations toward the cost of the altar before deciding upon its design and expense. He succeeded in obtaining a pledge from one parishioner of $6,000, from another $2,000, and $2,000 from a third, but the donors never fully paid the sums pledged. After receiving the pledges the pastor procured designs and entered upon a contract to furnish the congregation with the main altar and two side altars at a price of $10,000. The importation was entered by Father Reardon and the required certificates duly filed. The board found that the altars had not been imported for presentation. The appellate court stated "We do not disagree with the board in respect to any of these conclusions, but we have not discussed them in detail since we find the merchandise to be foreign to the primary classifications relied upon in the protest," the court finding the articles not to be within the definition of "works of art."

We do not think that either of the foregoing decisions is decisive of the issue in this case, although in the *Hill* case, *supra*, the court indicated that presentation of money earmarked for the purchase of an altar is not to be distinguished from an actual presentation of the altar.

In respect to the Government's contention that the intention of a donor to bestow articles to a religious organization should not post-date the importation of such articles and that there is an absence of such intention herein because the firm with whom the church authorities had entered into contracts to install such articles before a donor was secured was the importer, we are of the opinion that in matters relating to donations for religious purposes the language used in paragraph 1774 does not imply that the articles thereunder should be presented before importation, but rather that importation should occur at some time subsequent to the donation made to purchase such articles. Had the importation of the articles occurred prior to the donation, it is clear that the importation would not have been made in good faith for presentation if a donor had not been secured and the money earmarked for purchase. When at the time of importation letters of presentation of the articles are filed and letters of acceptance are presented, indicating that the articles are freely given without charge to, and accepted by, such religious organization as a donation, upon evidence that such presentation and acceptance was bona fide in all respects, the merchandise is entitled to free entry under paragraph 1774. In order to entitle such merchandise to free entry, it is not essential that the donor be cognizant of the fact that the articles he has agreed to donate were to be the subject of importation from abroad. Knowledge of that fact

at the time of importation is sufficient unless expressly otherwise specified in the paragraph granting exemption from duty.

In the *Trustees of Columbia College* case, T. D. 27,779, G. A. 6497, the paragraph under consideration (paragraph 703, Tariff Act of 1897) exempted from duty "works of art imported expressly for presentation to an incorporated religious society, college, or other public institution." There certain carved woodwork in Italian walnut intended for furnishing the chancel of a chapel for Columbia University and consisting of an altar, a pulpit, and other articles, was presented to the chapel by an unknown donor. The college trustees there employed artists who made sketches in certain churches of Rome and Florence, and from such sketches arrangements were made with other well known artists to produce the articles. Although the unknown donor had given the money for the articles, the trustees arranged for the importation and made the presentation to the college, and the court held the articles properly free of duty.

In the case of *Benziger* v. *United States*, 192 U. S. 38, the Supreme Court had under consideration the construction of paragraph 649 of the act of 1897, reading:

649. * * * statuary, and specimens or casts of sculpture, *where specially imported in good faith for the use and by order of any society incorporated or established solely for religious, philosophical,* * * * *purposes,* and not for sale; [Italics not quoted.]

There the court held certain marble statuary to be exempt from the payment of duty. In reaching such conclusion the court stated:

We think that the purpose of Congress was to permit their introduction free of duty as casts of sculpture, when specially imported in good faith for the use and by the order of any of the institutions named in the act. The paragraph in question (649) makes it necessary not only that the casts of sculpture should be specially imported in good faith for the use of a society, but it must be so imported *by the order* of such society. Here for the first time it is made necessary that the importation must have been *by order* of the society, which words are a still further limitation of the conditions upon the existence of which free entry is permitted.

It may well be that when the act of 1897 was drawn, its framers had in mind the objections above mentioned, made by the board of general appraisers, and therefore further limited the right of free entry to a special importation in good faith for the use *and by order* of the society, and to that extent protecting the interests of the "regular importers who sell from stock", while at the same time recognizing the policy of permitting a free entry to those societies which in good faith ordered the articles for their own special use.

\*　　\*　　\*　　\*　　\*　　\*　　\*

This provision of the statute should be liberally construed in favor of the importer, and if there were any fair doubt as to the true construction of the provision in question, the courts should resolve the doubt in his favor.

Had Congress, when drafting the provisions of paragraph 1774 of the Tariff Act of 1930, intended that the donor should have something to do with the importation or the foreign purchase of the articles, it

could have readily so indicated in the paragraph. We fail to find any ambiguity in the language of the paragraph. The intention of Congress is clear that the imported articles indicated are entitled to free entry when they are brought to this country specially for presentation without charge to and for the use of a religious corporation. As held by the Supreme Court provisions of this character should be liberally construed in favor of the importer and any doubt as to the true construction resolved in his favor.

For the reasons stated we hold that the articles covered by paragraph 1774, when specially imported into the United States through firms dealing in religious articles, or by donees through the use of funds donated for the purpose of presenting such articles for the use of such religious organizations, are entitled to an exemption from duty, even though the person making the donation of funds to cover the purchase of such articles was unaware that the same were to be imported until the goods arrived in this country; and that a donation of money before the importation of the articles for the express purpose of purchasing the same is proof that the articles were imported in good faith for presentation, without charge, to the religious organization.

Judgment will therefore be entered in favor of the plaintiff directing the collector to reliquidate the entry and make refund of all duty taken upon the articles in question herein.