# UNITED STATES *v.* PERRY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

No. 794.   Argued October 26, 28, 1892. — Decided November 7, 1892.

Paintings upon glass, consisting of pieces of variously colored glass, cut
into irregular shapes and fastened together by strips of lead, painted by
artists of superior merit especially trained for the work, representing
biblical subjects and characters and intended to be used as windows in a
religious institution, imported in fragments to be put together in this
country in the form of such windows, are subject to the duty of 45 per
cent imposed by paragraph 122 of the tariff act of October 1, 1890, 26
Stat. 573, c. 1244, upon stained or painted window glass and stained or
painted glass windows wholly or partly manufactured, and not specially
provided for in this act; and not to the duty imposed by paragraph 677,
26 Stat. 608, c. 1244, upon paintings specially imported in good faith for
the use of any society or institution established for religious purposes,
and not intended for sale.

THIS case arose out of the importation of certain stained
glass windows containing effigies of saints and other represen-
tations of biblical subjects. These windows were imported
and entered November 24, 1890, as "paintings" upon glass
for the use of the Convent of the Sacred Heart, located at
Philadelphia, and consisted of pieces of variously colored glass
cut into irregular shapes, and fastened together by strips
of lead, and intended to be used for decorative purposes
in churches, and when so used are placed upon the interior
of the window frame, and are backed by an outer window of
ordinary white glass. The outer window is necessary, as such
paintings require for their proper exhibition a transmitted
light. These paintings had been executed by artists of supe-
rior merit, especially trained for the work, and represented
biblical subjects and characters, such as St. Agnes, St. Joseph
teaching our Lord, St. Mark the Evangelist and St. Peter,
and other pictorial representations of like kind, designed for
religious instruction and edification. They did not come to
this country in a completed state, but in fragments to be
put together in the form of windows.

Upon these articles the collector of the port levied and collected a duty of 45 per cent imposed by paragraph 122 of the tariff act of October 1, 1890, 26 Stat. 573, c. 1244, upon "stained or painted window glass and stained or painted glass windows, . . . wholly or partly manufactured, and not specially provided for in this act."

. Against this classification defendant duly and seasonably protested, claiming the articles were exempt from duty as "paintings . . . specially imported in good faith for the use of any society or institution . . . established for religious . . . purposes, . . . and not intended for sale," under paragraph 677. A hearing was had before the board of general appraisers, who overruled the protest and affirmed the action of the collector. Respondents thereupon filed a petition in the Circuit Court for the Southern District of New York, praying for a review of the decision of the general appraisers, as provided in section 15 of the act of June 10, 1890, 26 Stat. 138, c. 407. The Circuit Court reversed the decision of the board of appraisers, and held the paintings to be entitled to free entry. *In re Perry*, 47 Fed. Rep. 110. From this decision the United States appealed to this court.

*Mr. Assistant Attorney General Maury* for appellants.

*Mr. W. Wickham Smith* (with whom were *Mr. Charles Curie* and *Mr. D. Ives Mackie* on the brief) for appellees.

Mr. Justice Brown after stating the case, delivered the opinion of the court.

It is difficult to fix the proper classification of the importations in question under the act of October 1, 1890, without referring to the prior acts upon the same subject.

By the tariff act of March 3, 1883, 22 Stat. 497, c. 121, there was imposed a duty of 45 per cent upon "porcelain and Bohemian glass, chemical glass ware, painted glass ware, stained glass, and all other manufactures of glass . . . not specially enumerated," while "paintings, in oil or water colors,"

(Id. 513,) were subject to a duty of 30 per cent; and "paintings, drawings and etchings specially imported in good faith" for religious institutions (Id. 520,) were admitted free. Under this and similar prior statutes, which did not differ materially in their language, it was uniformly held by the Treasury Department that the term "paintings" covered all works of art produced by the process of painting; irrespective of the material upon which the paint was laid; and that paintings on glass, which ranked as works of art, were dutiable as paintings, and when imported for religious institutions were entitled to admission free of duty. Like rulings were made with respect to paintings on ivory, silk, leather and copper, having their chief value as works of art. The term was also held to include wall panels painted in oil and designed for household decoration. A like view was taken by this court in *Arthur* v. *Jacoby*, 103 U. S. 677, of pictures painted by hand upon porcelain where the porcelain ground "was only used to obtain a good surface on which to paint, and was entirely obscured from view when framed or set in any manner, and formed no material part of the value of said paintings on porcelain, and did not in itself constitute an article of china ware, being manufactured simply as a ground for the painting, and not for any use independent of the paintings."

In the meantime, however, the manufacture of stained glass began to be a recognized industry in this country. Strong protests were sent to Congress against these rulings of the Department, and demands were made for the imposition of a duty upon stained glass windows as such, to save the nascent industry from being crushed out by foreign competition. Accordingly, in the act of October 1, 1890, we find a notable change in phraseology and the introduction of a new classification. By paragraph 122 a duty of 45 per cent is imposed upon "all stained or painted window glass and stained or painted glass windows, and hand, pocket or table mirrors, not exceeding" a certain size; while by paragraph 465, "paintings, in oil or water colors," are subject to a duty of only 15 per cent. The former exemption of "paintings, drawings, and etchings specially imported" for religious institutions is

continued in paragraph 677, while in paragraph 757 a similar exemption is extended to "works of art, the production of American artists residing temporarily abroad, or other works of art, including *pictorial paintings on glass,* imported expressly for . . . any incorporated religious society, . . . *except stained or painted window glass or stained or painted glass windows."*

It is insisted by the defendants that the painted glass windows in question, having been executed by artists of superior merit, specially trained for the work, should be regarded as works of art, and still exempted from duty as "paintings," and that the provision in paragraph 122, for "stained or painted window glass and stained or painted glass windows," applies only to such articles as are the work of an artisan, the product of handicraft, and not to memorial windows which attain to the rank of works of art. Those who are familiar with the painted windows of foreign cathedrals and churches will indeed find it difficult to deny them the character of works of art; but they would nevertheless be reluctant to put them in the same category with the works of Raphael, Rembrandt, Murillo, and other great masters of the art of painting. While they are artistic in the sense of being beautiful, and requiring a high degree of artistic merit for their production, they are ordinarily classified in foreign exhibits as among the decorative and industrial rather than among the fine arts. And in the catalogues of manufacturers and dealers in stained glass, including the manufacturers of these very importations, no distinction is made between these windows and other stained or painted glass windows, which, by paragraph 757, are specially excepted from the exemption of pictorial paintings on glass.

For most practical purposes works of art may be divided into four classes:

1. The fine arts, properly so called, intended solely for ornamental purposes, and including paintings in oil and water, upon canvas, plaster, or other material, and original statuary of marble, stone or bronze. These are subject to a duty of 15 per cent.

2. Minor objects of art, intended also for ornamental purposes, such as statuettes, vases, plaques, drawings, etchings, and the thousand and one articles which pass under the general name of bric-a-brac, and are susceptible of an indefinite reproduction from the original.

3. Objects of art, which serve primarily an ornamental, and incidentally a useful, purpose, such as painted or stained glass windows, tapestry, paper hangings, &c.

4. Objects primarily designed for a useful purpose, but made ornamental to please the eye and gratify the taste, such as ornamented clocks, the higher grade of carpets, curtains, gas-fixtures, and household and table furniture.

No special favor is extended by Congress to either of these classes except the first, which is alone recognized as belonging to the domain of high art. It seems entirely clear to us that in paragraph 757, Congress intended to distinguish between "pictorial paintings on glass" which subserve a purely ornamental purpose, and stained or painted glass windows which also subserve a useful purpose, and moved doubtless by a desire to encourage the new manufacture, determined to impose a duty of 45 per cent upon the latter, while the former were admitted free. As new manufactures are developed, the tendency of each tariff act is to nicer discriminations in favor of particular industries. Thus, by acts previous to that of 1890, paintings upon glass and porcelain were distinguished and taken out of the general category of manufactures of glass and porcelain, and even of stained glass, while under that act painted and stained glass windows are distinguished and taken out of the general designation of paintings upon glass. If the question in this case rested solely upon the language of paragraph 677, doubtless these importations would be exempted as paintings imported for religious purposes; but as, by paragraph 757, pictorial paintings on glass, a more specific designation, are again exempted, and stained glass windows are excepted and taken out of this exemption, we think the intent of Congress must be gathered from the language of the latter paragraph rather than the former. *Robertson* v. *Glendenning*, 132 U. S. 158. Particularly is this so in view of the fact that, by

paragraph 122, a duty is levied upon "stained or painted window glass and stained or painted glass windows" *eo nomine.* The use for which the importations are made in each case is much the same. The fact that these articles are advertised and known to the trade as painted or stained glass windows is an additional reason for supposing that Congress intended to subject them to a duty.

The judgment of the Circuit Court must, therefore, be

*Reversed, and the case remanded for further proceedings in conformity to this opinion.*