UNITED STATES *v.* COLUMBO CO. (No. 3592) [1]

United States Court of Customs and Patent Appeals, June 12, 1933

*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham, Jr.*, special attorney, of counsel), for the United States.

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellee.

[1] T. D. 46510.

**178**

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal involves the classification of sections of a mosaic, which mosaic in its completed state, as installed in a church in Jersey City, N.J., purports to be a copy of the painting "Disputa," painted upon a wall of one of the chapels of the Vatican at Rome.

The individual units of the mosaic are in the form of cubes, or pieces of colored glass. The importations were made in sections, each section comprising a large number of the cubes, placed in position, on paper, and ready to be attached to an inner wall of the building. The controversy at bar involves the protest arising under the first entry which consisted of several of the sections packed in three cases. Both the consular invoice and the entry refer to "Mosaic cubes of marble," but the court below found the cubes to be, in fact, of colored glass and this finding is concededly correct.

The local appraiser's description of the material is:

\* \* \* The merchandise in question consists of so-called mosaic cubes composed wholly or in chief value of glass, \* \* \* blown or partly blown in the mold or otherwise, or colored, cut, \* \* \* decorated, or ornamented. \* \* \*

The collector classified the articles and took duty under that portion of paragraph 218 (f), in connection with subparagraph (j), of the Tariff Act of 1930, reading as follows:

PAR. 218. (f) \* \* \* all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, or colored, cut, \* \* \* etched, frosted, gilded, \* \* \* painted, printed in any manner, sand-blasted, silvered, stained, or decorated or ornamented in any manner, \* \* \*.

\* \* \* \* \* \* \*

(j) For the purposes of this schedule an article shall be considered to be composed wholly or in chief value of glass if such article is wholly or in chief value of glass, or of paste, or of a combination of glass and paste.

The importer protested; and, as the issue was in the court below, and is here, presented, the claim was and is under the language of paragraph 1547 (a) of said tariff act, which reads:

PAR. 1547. (a) Works of art, including (1) paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same, \* \* \* 20 per centum ad valorem.

The First Division of the United States Customs Court sustained the protest, and from its judgment the Government appeals to this court.

The original painting is one of the famous productions of Raphael, known, historically, as one of the world's master artists. The design

of the mosaic copy is, itself, the production of a professional artist, Mr. Victor Zucchi, who has been engaged in the work of an artist for some 22 years—"Paintings, and paintings for mosaics; painting in churches around the country."

It appears from the record that Mr. Zucchi went personally to the Vatican and there made color sketches of the painting. These sketches were sent to a studio in Venice "to reproduce the colorings exactly." These reproductions at Venice seem to have been made by some person or persons other than Mr. Zucchi, who returned to the United States and here made cartoons for the work, the cartoons being "black and white drawings." The cartoons were sent also to Venice and from them tracings were made by a Mr. Roh Pietro (stated by Mr. Zucchi to be an artist), who is the proprietor of the establishment at which the mosaic was made. Mr. Zucchi describes certain of the operations as follows:

They take my cartoon and they make a tracing of my design, and from the same tracing they lay the mosaic down, following my line in shape of my cartoon and my color sketch.

The persons who actually place the bits of glass in position follow the tracings and the color sketches, these latter indicating the shades which are to be used in order to show the figures and blend the colors in the completed mosaic as they were respectively shown and blended in the original painting. Mr. Zucchi states that these persons are classed as "expert artisans on mosaics" and "sometimes they are called artists." During the progress of the work which required about 3 years for completion, there being at least, at times, 18 persons engaged in placing the cubes, Mr. Zucchi twice (in 1928 and again in 1929) visited the establishment in Venice. The first time he spent about 5 weeks there, and upon his second visit about 6 weeks.

Upon those occasions he caused corrections to be made when any were necessary in order to carry out the proper color scheme. In formulating the design for the mosaic it was necessary to give it a shape (and, apparently, a size) which would enable the placing of it upon an "oval or dome-shaped" wall and maintain the correct perspective of the original which was painted upon a flat wall. The completed mosaic is about 65 feet tall and about 40 feet in width at its widest point, it being somewhat elliptical in shape. The size and shape of the original painting are not stated in the record.

In addition to the supervision given by him to the actual work in Venice, it was also the function of Mr. Zucchi finally to pass upon and accept the completed article. As we understand the record, before so accepting it he caused all necessary corrections to be made. He also supervised its installation in the church for which it had been prepared.

It is thus to be seen that the article involved is of a character often referred to as a "mosaic painting" and that it constitutes a representation of a painting in oil made with a brush.

The original of which the mosaic is a representation is a work of art. Concerning this there is no controversy. Also, in conformity with the holding of this court as to certain of the articles involved in the case of *Frei Art Glass Co.* v. *United States*, 15 Ct. Cust. Appls. 132, T.D. 42214, the mosaic copy is likewise a work of art; in fact, the question being whether it is a work of art for tariff purposes.

The precise question here at issue, then, is whether a representation, in the form of a mosaic, itself a work of art, of a painting in oil made by a brush, which painting in oil is a work of art, is classifiable under paragraph 1547 (a), *supra*, of the Tariff Act of 1930.

A leading case relating to works of art, in the tariff sense, is that of *United States* v. *Perry*, 146 U.S. 71, wherein the Supreme Court of the United States held pieces of variously colored glass, cut into irregular shapes and fastened together by strips of lead, and intended to be used for decorative purposes as windows in churches, referred to in the opinion as "paintings" which "had been executed by artists of superior merit, especially trained for the work" not imported in a completed state, "but in fragments to be put together in the form of windows", to be classifiable under section 26 of the Tariff Act of 1890, which section provided a duty upon stained or painted window glass and stained or painted glass windows wholly or partly manufactured, rather than as paintings specially imported in good faith for the use of any society or institution established for religious purposes and not intended for sale, provided in section 677 of the same tariff act.

In the course of the opinion, the Supreme Court declared that, "for most practical purposes works of art may be divided into four classes", and defined such classes. It was there said:

* * * Those who are familiar with the painted windows of foreign cathedrals and churches will indeed find it difficult to deny them the character of works of art; but they would nevertheless be reluctant to put them in the same category with the works of Raphael, Rembrandt, Murillo, and other great masters of the art of painting. While they are artistic in the sense of being beautiful, and requiring a high degree of artistic merit for their production, they are ordinarily classified in foreign exhibits as among the decorative and industrial rather than among the fine arts.

The *ratio decidendi* of the *Perry* case, *supra*, has been looked to in many subsequent cases by the courts, the Congress having legislated in numerous subsequent tariff acts in the light of the interpretations there given, and having, in those acts, adopted and used much of the Supreme Court's defining language.

Such was the situation in the case of *Lazarus, Rosenfeld & Lehmann* v. *United States*, 2 Ct. Cust. Appls. 508, T.D. 32247, and in the case of *United States* v. *Downing & Co.*, 6 Ct. Cust. Appls. 545, T.D. 36197,

in the latter of which there is an elaborate list of citations upon various points. Alleged sculpture was involved in the two foregoing cases, as it also was in the case of *United States* v. *Olivotti & Co.*, 7 Ct. Cust. Appls. 46, T.D. 36309, wherein there was set forth a definition of the phrase "works of art", elaborating, to some extent, that given by the Supreme Court in the *Perry* case, *supra*, but not varying in meaning therefrom.

In the case of *Petry Co.* v. *United States*, 11 Ct. Cust. Appls. 525, T.D. 39666, which arose under the Tariff Act of 1913, there was involved "a picture composed of marble mosaics inclosed in an elaborate gilt frame." The picture apparently was an original creation, not a copy. This court said of it:

\* \* \* It depicts an elderly artisan engaged at work upon his bench, while an aged companion reads to him from a print at his side. The figures are pleasing and attractive, the idea is engaging, and the execution is artistic in a marked degree.

This court there held that the word "including", appearing in that act as it does in paragraph 1547 (a) *supra*, which the importer here invokes, after the phrase "works of art", is a term of specification and definition rather than of exclusion, and added:

\* \* \* Accordingly, the paragraph may include works of art such as those mentioned by name in it, and also such as are ejusdem generis therewith and not otherwise provided for in the act.

It was declared, however, that any article to be *ejusdem generis* with "paintings in oil" and other articles mentioned *eo nomine* in the paragraph must be a "'work of art' in the tariff sense", and it was declared—

\* \* \* we do not think that marble mosaic pictures answer to that description.

It was further said:

We think that mosaic articles, while often beautiful and artistic, are the fabrications of artificers rather than the productions of artists, and are not within the domain of the fine arts as above defined. This view finds support in the well-known uses to which such work is commonly applied. It serves generally as an architectural ornament for the decoration of the ceilings, walls, or floors of churches or other public edifices, or in the manufacture of costly furniture or jewelry. That fact is recognized by the accepted definition of the word "mosaic." The word is defined by the Standard Dictionary as follows: ·

Mosaic: 1. A kind of tesselated or inlaid work composed of bits, squares, or cubes of stone, glass, enamel, etc., combined so as to form an artistic pattern for wall decoration or pavements, and used also for other purposes, as for table tops or jewelry. 2. A piece of inlaid work of this kind.

The opinion then sets forth a list of instructions by the Treasury Department to Collectors of Customs, certain rulings of the Treasury Department, and certain decisions of the Board of General

Appraisers (now the United States Customs Court) relating to the classification of mosaics of different types under various tariff acts. These instructions, rulings, and decisions so referred to are embraced, respectively, in T.D. 547, T.D. 1448, T.D. 2624, T.D. 10620, T.D. 16116, T.D. 16301, and T.D. 16821.

After citing these, the opinion continues:

Some of the foregoing rulings touch but partially upon the question now before us; nevertheless they disclose that under preceding tariff acts marble mosaic pictures were not regarded as works of art in the same class with paintings in oil or water colors, but were uniformly classified under the provisions for "manufactures" of the materials of which they were composed. We think that Congress did not intend to depart from that rule when enacting paragraph 376 [of the 1913 tariff act], and we therefore conclude that the imported picture does not come within its purview either by direct mention or by assimilation with the articles which are directly mentioned therein.

In other words, it was held in the *Petry Co.* case, *supra*, that, by reason of Congress having used the particular phraseology of the paragraphs there at issue in the light of administrative practice, the mosaic there involved was not a work of art within the intent of the paragraph under which the importers there claimed, said paragraph being the prototype of that under which the importer is here claiming.

However, the concluding paragraph of the majority opinion in the *Petry & Co.* case, *supra* (Judges Smith and Bland having specially concurred), reads:

We may add, however, that this conclusion relates, of course, to mosaic articles like the one now in controversy, and does not necessarily apply to every possible picture into which stone may enter as a component material.

It is urged here, by Government counsel, that this case is controlled by the doctrine of the *Frei Art Glass Co.* case, *supra.*

Several different mosaic articles made of colored glass cubes, or pieces, were there involved, the ones most nearly analogous to the article at bar being described in the opinion as—

* * * copies made of small pieces of colored glass, of certain mosaics of the third century, to be found in the cathedral of Santa Maria Maggiore in Rome, Italy.

In its opinion the above is referred to as the second class of importations considered.

Other mosaic articles involved are described in this opinion as—

* * * original mosaic works, made of small pieces of colored glass representing certain stations of the cross and scenes in the life of Christ, and other religious and mythological conceptions.

From a careful analysis of this court's opinion in the *Frei Art Glass Co.* case, *supra*, we are of the opinion that it controls the issue here. In its opinion in said case the court said:

Four witnesses were called and testified at the hearing before the court below. In view of our conclusions of law, it will not be necessary here to state at length

the testimony of such witnesses. It will be sufficient to say that they were all persons well qualified to discuss art subjects. In substance they stated that the present importations are works of art, in the general acceptation of those terms; that exhibit 1 is a painting on glass designed and executed by an artist of note; that the second class of importations hereinbefore named are exact copies of well-known works of art, both original and copies having been executed by well-known artists; that the third class named consists of original works designed and executed by artists of note. It is further made to appear that such works cannot be created by artisans, but require the work of artists. In addition, the history of the art of mosaics is shown, showing that such art is an ancient one and one that has been practiced by many celebrated artists, both ancient and modern. It further appears that these works are commonly called "mosaic paintings."

It is also shown that the imported articles are all intended to be set in cement in walls or ceilings and that such mosaics are always thus used, except as to some small pieces, which are backed with boards and are thus hung in museums. In addition to this testimony, several samples of the mosaic work in question are before us. These are well executed and give every impression, to the lay mind at least, of the exercise of a high order of artistic ability.

There, copies of well-known mosaic works of art were considered, as well as original works in mosaic executed by artists of note. With respect to both classes, the court held that they were not within the provisions of paragraph 1449 of the Tariff Act of 1922, which is the predecessor of paragraph 1547 of the Tariff Act of 1930. It is true that in that case there was not involved the question of whether a representation in mosaic of an oil painting, the latter concededly a work of the free fine arts, was excluded from classification under said paragraph 1449 of the Tariff Act of 1922, but it was there expressly held that original works in mosaic form, executed by artists of note, were excluded from said paragraph 1449. It would be an anomalous situation were we to hold that an original creation in mosaic form by a recognized artist did not fall under the provisions of paragraph 1547 (a) of the Tariff Act of 1930, but that, if the same artist produced in mosaic form a representation of an original oil painting executed by a noted artist, such representation would fall under the provisions of said paragraph 1547 (a).

We cannot so hold, for we are clear that Congress could have had no such intention.

Furthermore, paragraph 1547 (a) uses the phrase "copies, replicas, or reproductions of any of the same." We think that the word "copies," as used in said paragraph, has a broader meaning than either of the words "replicas" or "reproductions," but nevertheless the word "copy" must be construed according to its common meaning.

Funk & Wagnalls' New Standard Dictionary defines a copy as—

a reproduction or imitation, as of a writing, printing, drawing, painting, or other work of art, so as to have another or others similar to the original.

Webster's New International Dictionary defines a copy as—

an imitation, transcript, or reproduction of an original work.

We do not think that the mosaic representation of the painting "La Disputa" can be said to be a copy of the same within any of said dictionary definitions.

In excluding the mosaics involved in the case of *Frei Art Glass Co.* v. *United States, supra,* the court said:

> That these importations are works of art in the general acceptance of the terms must be conceded. They embody the artistic conception and artistic execution as well. If it were a matter of first impression, the court might well conclude that they were works of art in every sense, and as such included within that designation as it appears in paragraph 1449. But we feel we are precluded from so doing by an almost uniform administrative practice of long standing and by a line of well-considered authorities.

Since that decision was rendered, another tariff law has been enacted and Congress had full opportunity, by appropriate legislation, to bring such a work of art as is here involved within the provisions of said paragraph 1547 (a). It did not see fit to do so; therefore the reasons for adhering to the decision in said *Frei Art Glass Co.* case, *supra,* are very compelling, although, if this were a matter of first impression, we might well conclude that the importation here in question is a work of art, included within that designation as it appears in said paragraph 1547 (a).

We hold that the collector correctly classified the importation here involved, and that the protest should have been overruled.

The judgment of the United States Customs Court is *reversed.*

### CONCURRING OPINION

BLAND, Judge. I concur in the result of this decision solely upon the ground of legislative adoption of judicial interpretation. It has always been my veiw, and is now, that the *Frei Art Glass Co.* case, *supra,* which held that a mosaic painting of high artistic quality was not a work·of art within the provision of paragraph 1449 of the Tariff Act of 1922, which paragraph not only provided for paintings in oil or water color and copies of the same but included pen and ink drawings and copies of the same, as well as etchings and engravings, was an arbitrary holding which had no support in reason or authority.

However, as is said, in substance, by the majority in the instant case, Congress has had plenty of time to reframe the provisions of this paragraph and has not done so (except in a respect not pertinent here). If the subject matter was of more common interest, no doubt it would have done so, because it leads to an absolute absurdity to deny highly artistic articles like that at bar classification as a work of art at a low rate of duty, when it is universally admitted that Congress always favors encouraging art in this country by permitting the importation of articles which are highly artistic in character either free of duty or at a low rate.

Were it not for the doctrine of legislative adoption of judicial interpretation, I could never agree to the classification of merchandise such as is at bar as a manufacture of glass, dutiable at 60 per centum. No one contends for a moment that it is not a work of art or that it is not a work of the fine arts. It is nowhere suggested that it is the work of the artisan or the glassmaker, or that the artist in this instance has, as in some of the decided cases, engaged in the work of the artisan. I do not recall, in my more than ten years of experience on this bench, that any article possessing more artistic merit, and more entitled to the 20 per centum rate of duty, has ever been passed upon by this court.

DISSENTING OPINION

GARRETT, Judge: I feel constrained to dissent in the instant case, notwithstanding the fact that I must recognize the nearness of its approach to the case of *Frei Art Glass Co.* v. *United States*, 15 Ct. Cust. Appls. 132, T.D. 42214, upon the doctrine of which the majority rest their decision. I regard it as being readily distinguishable, upon the proven facts, from the earlier case of *Petry Co.* v. *United States*, 11 Ct. Cust. Appls. 525, T.D. 39666, also cited in the majority opinion.

I think it obvious from reading the majority and specially concurring opinions in the latter case that the evidence in that record was not sufficient to distinguish the mosaic there involved from the mosaics which had been involved in the various Treasury decisions therein cited. Hence it was evidently there felt by the court that the doctrine of legislative adoption of administrative practice should be applied.

That this court there confined its application of that doctrine to that particular case and arrived at the conclusion there reached because of the failure of the proofs to establish that the mosaic involved met the statutory requirements as to works of art for tariff purposes seems clear to me from the concluding paragraph of the majority opinion which is quoted in the opinion of the majority in the instant case.

I feel that the court there had in mind the possibility of importations such as that now before us, and recognized the fact that evidence might be presented, such as has here been presented, which would lead to a conclusion different from that there reached.

It is established here beyond peradventure, by uncontradicted testimony, that the mosaic involved is itself, in truth, a work of art and that it is a faithful mosaic copy of a painting in oil by one of the world's master artists. The production of the copy required three years of intensive work under the direction and supervision of a recognized artist. I find it difficult to reconcile myself to the holding that its classification should be governed by an administrative

practice, approved by judicial decisions predicated in each instance upon the particular facts shown in the particular case, which began with the classification of mosaics used principally for wall decorations, pavements, mantels, and the like.

Frankly, this seems to me to do violence to the generally known and historic disposition of the Congress relative to the promotion of cultural and esthetic tastes, and the developing of the finer spiritual emotions and impulses.

The testimony in this case relative to the character of this mosaic, and to the genuinely artistic character of the painting, of which I think it should, in the contemplation of the statute, be regarded as a copy, seems to me to be clearer and more definite than was the testimony relative to the somewhat analogous articles involved in the *Frei Art Glass Co.* case, *supra*, and, in any event, upon this record, I feel, most earnestly, that the judgment of the United States Customs Court should be affirmed.