(C.D. 2257)

ABERCROMBIE & FITCH COMPANY *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 22, 1961)

Tompkins & Tompkins (Allerton deC. Tompkins of counsel) for the plaintiff.
William H. Orrick, Jr., Assistant Attorney General (Mollie Strum and Murray
Sklaroff, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges; OLIVER, C. J., concurring

WILSON, Judge: The merchandise at bar (plaintiff's exhibit 1 and plaintiff's illustrative exhibit 2) was classified for duty under paragraph 1518 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, and T.D. 52476, at the rate of 37½ per centum ad valorem under the provisions therein for—

> Natural grasses, grains, leaves, plants, shrubs, herbs, trees, and parts thereof, not specially provided for: * * * When colored, dyed, painted, or chemically treated * * * and all articles not specially provided for, composed wholly or in chief value of natural grasses, grains, leaves, or other material mentioned in the preceding item: * * * If the component material of chief value is colored, dyed, painted, or chemically treated____ 37½% ad val.

A number of claims are made in the protest as follows:

Under paragraph 1558 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, and T.D. 52827, for nonenumerated manufactured articles at the rate of 10 per centum ad valorem; under paragraph 412 of the tariff act, as modified by T.D. 52373 and T.D. 52476, supra, at the rate of 16⅔ per centum ad valorem as manufactures of wood or bark; or under paragraph 1547(a) of the act, as modified by the General Agreement on Tariffs and Trade, T.D. 51802 (or by similitude under paragraph 1559 of the tariff act), at the rate of 10 per centum ad valorem, as works of art, not specially provided for.

The samples in evidence (plaintiff's exhibit 1 and plaintiff's illustrative exhibit 2) consist of articles invoiced as "Original Miniatures," each miniature being an original small wooden framed wall hanging having the general appearance of a painting. These framed articles are about 15 inches in circumference and approximately 5 inches in diameter. The framed inserts consist of a flowerlike decorated cardboard background on which is imposed figures of small birds and also natural substances, such as grasses, leaves, stems, branches, etc., all of which framed articles, it appears, have been arranged and decorated by an artist to represent birds, flowers, etc., in a natural setting.

The plaintiff introduced in evidence by way of deposition (plaintiff's exhibit 3) the testimony of Hamilton Elliott Hervey who described himself as a "Miniature artist" for 10 years, specializing in 3-dimensional miniatures of animals and birds. He stated that for 5 or 6 years he has been a member of The Royal Society of Miniature Painters, Sculptors, and Engravers, whose purpose is to foster miniature painting. In this connection, Mr. Hervey testified that he had held three one-man shows of his own work and that he annually exhibits at the aforesaid Royal Miniature Society. The witness further stated that he had produced the items at bar, all of the materials having been personally purchased by him; that the materials used in making these items were water colors, natural vegetable materials, glues, etc.; and that all of the items in question had wood frames, convex glass, background cards, vegetable or feather materials, and, also, with the exception of "the 18 miniatures at $5.00 each," had cardboard mounts inside the frames. He then enumerated the various production costs and the length of time employed by him in setting up each of the items or materials which make up the involved articles.

Mr. Hervey described the production of these miniatures as follows:

* * * Painting the water colour picture which forms the background to the miniature, making the animals and birds from vegetable materials, and assembling the various items on to the background. None of these items is completed as a separate item. The water colour background is carried to a certain point, and the birds, animals, flowers, etc., are in an approximate form before being assembled on the background, but all the items, including the painting, are completed after all the items are on the background itself, after which the completed picture is framed.

Our appellate court and the United States Supreme Court, as well as this court, have distinguished between works of art which belong to that class known as the free fine arts and those which properly are classified as decorative and industrial arts, and have held that "the privileges extended by the tariff acts have been limited to the former class." *G. W. Sheldon & Co.* v. *United States*, 61 Treas. Dec. 1015, T.D. 45671; *United States* v. *Perry*, 146 U.S. 71; *United States* v. *Halle Bros. Co.*, 6 Ct. Cust. Appls. 543, T.D. 36196; *United States* v. *Downing & Co.*, 6 Ct. Cust. Appls. 545, T.D. 36197.

In the *Perry* case, *supra*, the merchandise consisted of painted window glass, consisting of pieces of variously colored glass, cut into irregular shapes and fastened together by strips of lead, the paintings thereon executed by artists of superior merit and representing biblical subjects and characters, imported in fragments to be put together in the form of windows, for the use of a convent. The court held the merchandise properly dutiable at 45 per centum ad valorem under paragraph 122 of the Tariff Act of 1890 as stained or painted window

glass, and not exempt from duty as paintings imported for the use of a religious society and not intended for sale under paragraph 677 of said act. In its decision, the court pointed out that, in paragraph 757 of the Tariff Act of 1890, which provided for "Works of art, * * * including pictorial paintings on glass, imported expressly for * * * any incorporated religious society, * * * except stained or painted window-glass or stained or painted glass windows," Congress intended to distinguish between pictorial paintings on glass and stained or painted glass windows. In such connection, the court stated:

For the most practical purposes works of art may be divided into four classes:

1. The fine arts, properly so called, intended solely for ornamental purposes, and including paintings in oil and water, upon canvas, plaster, or other material, and original statuary of marble, stone or bronze. These are subject to a duty of 15 per cent.

2. Minor objects of art, intended also for ornamental purposes, such as statuettes, vases, plaques, drawings, etchings, and the thousand and one articles which pass under the general name of bric-a-brac, and are susceptible of an indefinite reproduction from the original.

3. Objects of art, which serve primarily an ornamental, and incidentally a useful, purpose, such as painted or stained glass windows, tapestry, paper hangings, etc.

4. Objects primarily designed for a useful purpose, but made ornamental to please the eye and gratify the taste, such as ornamented clocks, the higher grade of carpets, curtains, gas-fixtures, and household and table furniture.

No special favor is extended by Congress to either of these classes except the first, which is alone recognized as belonging to the domain of high art. * * *

In the case of *United States* v. *Olivotti & Co.*, 7 Ct. Cust. Appls. 46, T.D. 36309, our appellate court said:

Finding, as we do, that the font is not sculpture, the next question which arises is, Can it, because of its beauty and artistic character, be classified as a work of art within the meaning of paragraph 376? We think not. In our opinion, the expression "works of art" as used in paragraph 376, was not designed by Congress to cover the whole range of the beautiful and artistic, but only those productions of the artist which are something more than ornamental or decorative and which may be properly ranked as examples of the free fine arts, or possibly that class only of the free fine arts imitative of natural objects as the artist sees them, and appealing to the emotions through the eye alone. The potter, the glassmaker, the goldsmith, the weaver, the needlewoman, the lace maker, the woodworker, the jeweler, all produce things which are both artistic and beautiful. It can hardly be seriously contended, however, that it was the legislative purpose to include such things, beautiful and artistic though they may be, in a provision which, as shown by its history and the enumeration therein contained, was intended to favor that particular kind of art of which painting and sculpture are the types. * * *

In the *Sheldon* case, *supra*, certain decorative pottery in the form of an interior garden, although shown to be an original model signed by an artist, was held, upon inspection of the sample and weight of the evidence, to belong to the decorative and industrial arts, rather than

the free fine arts, and, therefore, not dutiable under predecessor paragraph 1449 of the Tariff Act of 1922. The merchandise there involved was held properly dutiable, as assessed, as earthenware and crockery ware. To like effect, was the holding of our appellate court in the *Halle Bros.* case, *supra*. There, a certain work of marble, said to be a copy of a mantel in the Doge's Palace at Florence, Italy, neither copy nor original being shown to be the production of a professional sculptor, was held not to be a sculpture or a work of art under predecessor paragraph 376 of the Tariff Act of 1913.

For other cases in which the provisions of paragraph 1547(a) of the act of 1930, and similar provisions of prior tariff acts, were held to apply only to the works of free fine arts, as distinguished from decorative and industrial art, see *United States* v. *Hensel, Bruckmann & Lorbacher*, 18 C.C.P.A. (Customs) 297, T.D. 44504; *United States* v. *Hunt Diederich*, 19 C.C.P.A. (Customs) 156, T.D. 45274; *Cassard Romano Co., David A. Haagens* v. *United States*, 19 C.C.P.A. (Customs) 191, T.D. 45294; *O. O. Friedlaender Co.* v. *United States*, 19 C.C.P.A. (Customs) 198, T.D. 45295; *Alexander & Oviatt* v. *United States*, 21 C.C.P.A. (Customs) 97, T.D. 46410; *United States* v. *A. Ackermann & Sons*, 21 C.C.P.A. (Customs) 329, T.D. 46852; *United States* v. *W. X. Huber Co.*, 21 C.C.P.A. (Customs) 567, T.D. 46991; and *United States* v. *Mrs. Adelaide Ehrich*, 22 C.C.P.A. (Customs) 1, T.D. 47019.

In our opinion, the articles here involved are not properly classifiable under paragraph 1547(a) of the Tariff Act of 1930 under the provision therein for "works of art." Everything that is ornamental or decorative cannot be classified or embraced within the tariff provision for "works of art." The articles here, while undoubtedly decorative, do not conform to those productions of an artist which over the years have been considered, by reason of their beauty and artistic character, to be works of art. Neither are the involved wall hangings any of the articles enumerated in subdivisions 1 and 3 of paragraph 1547(a) of the tariff act, under which plaintiff claims the merchandise should be classified. Examination of the samples in evidence reveals that they are neither "paintings in oil or water colors," "pastels," "pen and ink drawings," nor "copies, replicas, or reproductions of any of the same," nor are they "etchings and engravings." Although plaintiff's witness stated in reply to an interrogatory that he belongs to a certain society which fosters "miniature paintings," examination of the importations at bar shows that they are not miniature paintings. The record further discloses, through deposition, that plaintiff's witness who prepared the miniature representations of the flowers, birds, and buds here under consideration had "not attended an art school of any sort," and we cannot say, in view of his related background, that his testimoney to the effect that the involved items are works of art is suffi-

ciently persuasive to compel a finding that the importation at bar is properly classifiable as such. Finding as we do that the merchandise is not classifiable under paragraph 1547(a) of the tariff act as works of art, the claim for classification of the merchandise, by similitude, to works of art is, in our opinion, also untenable.

Plaintiff's alternate claim that the involved miniatures should be classified under paragraph 412 of the Tariff Act of 1930, as modified, *supra*, as manufactures of wood or bark, or of which wood or bark is the "component material of chief value," is also, in our opinion, without merit. The component material of chief value is to be ascertained by the value of the various components when they are completed and when nothing remains but to put them together into the finished article. *United States* v. *Meadows*, 2 Ct. Cust. Appls. 143, T.D. 31665. As was stated by our appellate court in *United States* v. *H. A. Caesar & Co.*, 32 C.C.P.A. (Customs) 142, 143, C.A.D. 299:

> The rule in the cited cases is constant in that the proper method by which the component material of chief value is determined is in proving the cost of the separate parts of the article at the time they are ready to be combined to make the completed article.

We do not believe that the plaintiff, in this case, has established for the merchandise involved a component material of chief value other than that found by the collector. While plaintiff's witness testified as to purchase costs of the various frames, convex glasses, cardboard mounts, and paints in the completed articles, he could only approximate the costs of the sprays and adhesives employed therein, explaining that "it is quite impossible to work out the cost of them. The others are actual costs. They are things I buy." Further, time and labor expended in the selection, procurement, and processing of each of the materials that go to make up the completed article are proper cost factors in the determination of the chief value of the component materials. Here again, plaintiff's witness approximates the labor and time expenditure elements with respect to the work performed on the birds in these miniatures (answer, interrogatory 6(a)) and also gives an approximation of the labor required in drying and treating the materials and in painting the water color background, as well as in building up the scenery in the involved articles. All of these are relevant factors in the determination of chief value. Such an indefinite estimation of the cost factors involved, as here disclosed, does not establish the cost of the separate components of the articles at bar at the time they are combined to form the completed article. In the determination of the component materials of chief value, not only must the cost of the raw materials be evaluated, but it is also necessary to establish the value of the component items after they have been treated and processed, in addition to establishing cost amounts for time and labor expended in the production of the completed article.

In the *H. A. Caesar* case, *supra,* our appellate court, page 144, observed as follows:

> In our opinion appellee did not sustain its burden of proof in that the record does not show the costs of the component parts to the manufacturer at the time they were ready to be combined to form the completed article. The only costs given are as heretofore set out and apparently those costs are for the raw materials and not for the value of the silk or rayon after they have been manipulated by winding and warping. * * *

In our opinion, plaintiff has failed in its burden of proof and has not established the component of chief value in the items at bar as other than that found by the collector.

Counsel for the plaintiff, in contending for classification of the involved articles as works of art, itself argues that "We believe the court would do a grave injustice if these miniatures were to be classified as being in chief value of the wood frames" (plaintiff's brief, page 6), a conclusion with which we are in agreement, predicated upon our finding that it has not been established in this record that the articles involved are in "chief value" of wood or that they should be classified as manufactures of wood, irrespective of the nature and character of these wall hangings.

Concededly, the importation at bar "is composed of natural substances, such as feathers, grasses, grains, seeds, etc., attached to a cardboard background and then framed" (plaintiff's brief, page 1). Paragraph 1518 of the Tariff Act of 1930, as amended, under which the involved merchandise was classified, provides for articles composed wholly or in chief value of "Natural grasses, grains, leaves, plants, shrubs, herbs, trees, and parts thereof." Inasmuch as these are specific provisions covering the tariff classification of the importation in question, the provision in paragraph 1558 of the act for nonenumerated articles is the least specific as applied to the involved items and cannot prevail over the specific provisions of paragraph 1518, *supra.*

For all of the reasons stated aforesaid, and upon the applicable authorities cited, we hold the wall hangings at bar properly classifiable under paragraph 1518 of the Tariff Act of 1930, as amended, *supra,* at the rate of 37½ per centum ad valorem as "articles not specially provided for, composed wholly or in chief value of natural grasses, grains, leaves, or other material * * * colored, dyed, painted, or chemically treated," as assessed.

The protest claims herein are overruled. Judgment will be entered accordingly.

CONCURRING OPINION

OLIVER, Chief Judge: While I agree with the ultimate conclusion of my learned colleagues, overruling the protest, my reasoning, as

developed, *infra*, in reaching that conclusion does not follow the same line of thought.

The majority opinion very aptly characterizes the articles under consideration as small wooden-framed wall hangings. From an examination of the samples in evidence, it appears that each of the items in question shows figures of two small birds perched on branches with tiny leaves and flowers, all of which are attached, by adhesive, to a painted background. The entire setting of each conforms to the title—"Nature Study—Ruby Throated Humming Birds" (plaintiff's exhibit 1) and "Nature Study—Wood Thrushes" (plaintiff's exhibit 2)—on the back of the wooden frame of each article.

In *Marshall Field & Co.* v. *United States*, 45 C.C.P.A. (Customs) 72, C.A.D. 676, the Court of Customs and Patent Appeals discussed, very comprehensively, paragraph 1518, as modified. The cited case involved two different articles. One was described as "a wrought iron wall decoration using a fruit and leaf motif," and was classified as "artificial fruits." The other article was invoiced as "Iron pictures of 4 season flowers rusty finish with dull black wooden frame," and consisted of "a species of three-dimensional monochrome pictorial compositions mounted in frames," and was classified as "artificial flowers." Although neither the provision for "artificial fruits" nor the provision for "artificial flowers" is involved herein, the reasoning followed and the statutory construction enunciated in the cited case can be applied with equal force and effect in the classification of the wall hangings involved in this case.

In the *Marshall Field & Co.* case, *supra*, the appellate court held that the iron wall decoration and the iron pictures were not within the provisions of paragraph 1518, as modified, as classified, but were properly classifiable according to the component material of chief value, i.e., as manufactures of metal, as claimed. In reaching its conclusion, the court reviewed several cases that discussed the provisions for artificial fruits and artificial flowers, and then stated as follows:

It will be seen from the cases above mentioned that many different factors were taken into consideration in determining whether the articles in each case were artificial fruits or flowers. These factors were not limited to the two questions of closeness of simulation and suitability to the ornamental uses of real flowers referred to in the *Cochran* opinion but included others such as size, primary function, other recognized names, uses and applicable tariff act provisions, and ordinary common sense. The situation must be viewed as a whole.

The tariff laws are drafted in the language of commerce which is presumptively that in common use and no testimony as to common meaning is required to make out a case because such testimony, if offered, is merely advisory to the court. *Hummel Chemical Co.* v. *United States, supra.* We have before us samples of the merchandise which, in a case of this character, are most potent witnesses, *United States* v. *The Halle Bros. Co.*, 20 C.C.P.A. (Customs) 219, T.D. 45995;

*United States* v. *Fred. Gretsch Mfg. Co., Inc.*, 28 C.C.P.A. (Customs) 26, C.A.D. 120.

In my view, the substance of the foregoing quotation is controlling in the case before us. In common understanding, the articles under consideration are readily discernible as wall hangings. No casual observer would refer to them as articles of natural grasses and leaves. They are finished products, arranged and decorated by an individual to depict settings of nature, and designed to be hung on a wall as attractive decorations. It is my considered opinion that these articles are not within the classes of merchandise covered by the provision in paragraph 1518, as modified, invoked by the collector.

I concur with the majority in holding, as they do, that the wall hangings in question are not properly classifiable as works of art and that the evidence adduced herein is not sufficient to show that the component material of chief value in these articles is wood, as alleged in the protest. Since plaintiff has failed to establish that the present merchandise is not provided for in any of the enumerated provisions of the tariff act, the claim for classification as nonenumerated manufactured articles cannot be supported. *Package Machinery Co.* v. *United States*, 41 C.C.P.A. (Customs) 63, C.A.D. 530.

On the basis of the present record and for the reasons hereinabove set forth, I will support the judgment herein, overruling the protest.