### TIFFANY v. UNITED STATES.

(Circuit Court, S. D. New York. February 5, 1895.)

#### No. 898.

CUSTOMS DUTIES—ACT OF OCTOBER 1, 1890—PAINTED FANS.

     Fans, composed of silk and bone, upon which are executed artistic paintings in water colors, of high value and merit, and which are displayed as ornaments and not used as fans ordinarily are, *held* not to be dutiable as manufactures of silk at 50 per cent. ad valorem under paragraph 414, but at 15 per cent. under paragraph 465 of the act of October 1, 1890 as "paintings in oil or water colors."

Appeal by importer from decision of board of general appraisers affirming the action of the collector in assessing duty on certain painted fans. Reversed.

William B. Coughtry, for importer.

Wallace Macfarlane, U. S. Atty., and Henry C. Platt, Asst. U. S. Atty.

COXE, District Judge (orally). The importations in controversy consist of paintings upon fans made of silk and other materials. The collector assessed them under paragraph 414 of the tariff act of 1890 as manufactures of which silk is the material of chief value. His action was sustained by the board of general appraisers. The importer protested, insisting that the importations are "paintings" within the provisions of paragraph 465 of the same act. "Fans" are not mentioned eo nomine in the act, except in paragraph 564

of the free list, which is not applicable to this controversy. The court is not called upon to define the word "paintings" further than is necessary for the purposes of the present controversy. If these importations are paintings it disposes of the issue. In ordinary parlance it is, perhaps, true that a painting is understood to mean a picture in oil or water colors, painted on canvas or paper, inclosed in a suitable frame and intended to be hung on the walls of a public or private building. But such a definition is manifestly too narrow. Many of the works of the old masters are frescoes painted on stone. Some of the gems of more modern art are painted on wood, ivory, porcelain, china, silk, cotton and other textile fabrics. It is also true that paintings are not always used as mural decorations. They may be placed on fire screens, lamp shades, placques, and, indeed, on almost any article which is to be ornamented. Nor is size a controlling factor. Some of the masterpieces of Meissonier and Meyer von Bremen are hardly larger than the subjects of this controversy. So too a painting may be of almost any conceivable shape. I presume we can all recall instances where the artist has painted his picture upon a fan-shaped background. Obviously, then, it is not size or shape or material or use which is to determine, arbitrarily, the character of these importations. There is no dispute that these productions are the works of artists of recognized ability and standing in their profession, and that at least two-thirds of the value is imparted to the fans by the skill, genius and reputation of the artist. The silk would be comparatively of no value but for the work of the artist. It is the painting, not the silk, which makes the fan valuable. Take for instance the picture by Houghton, which might properly be called "The Chess Players." No one who has the slightest knowledge of art can fail to see that in drawing, coloring, grouping and in attention to minute detail it is a painting of great beauty and merit. To call such a work of art "a manufacture of silk" seems almost as irrational as to call the Venus of Milo "a manufacture of marble." It is doubtless true that such a painting should be preserved under glass, but it does not cease to be a painting because it is placed upon a fan. These views lead me to reverse the decision of the board of general appraisers.