UNITED STATES *v.* RIEBE (No. 35).[1]

1. QUESTIONS OF FACT.

The Court of Customs Appeals has power to review questions of fact.

2. ULTRAMARINE BLUE.

Where there were two importations of material resembling ultramarine blue, and assessed as ultramarine blue by the collector of customs, under paragraph 52, tariff act of 1897, the Board of General Appraisers, after testimony taken, finding one item properly assessed and the other improperly assessed, because this rightfully fell under paragraph 58 of said act, the facts being reviewed, the board is affirmed.

United States Court of Customs Appeals, June 22, 1910.

APPEAL from a decision of the Board of United States General Appraisers, Abstract 21396 (T. D. 29834).

[Affirmed.]

*D. Frank Lloyd*, Assistant Attorney General (*Charles D. Lawrence* on the brief), for the United States.

*James L. Gerry* and *Allan R. Brown* for appellee.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This is an appeal from a decision of the Board of General Appraisers. The merchandise in question consisted of two importations, each of which was classified by the collector of customs as ultramarine blue and a duty assessed thereon under paragraph 52 of the act of 1897 at the rate of $3\frac{3}{4}$ cents per pound.

The importers claimed that neither of the importations was according to the commercial standard ultramarine blue, but should have been assessed at 30 per cent under paragraph 58 of the act as a paint, color, or pigment not otherwise provided for.

The case was heard before the Board of General Appraisers upon testimony, and an opinion filed in which it was found that as to one item, known in the record as item 3007, the collector's classification was correct; but that as to the item known as 3006 the article was not what was known commercially as ultramarine blue and dutiable as such, and sustained the contention of the importer.

It is obvious that the finding of facts of the Board of General Appraisers fully sustains the result reached, and the first question presented is whether we are at liberty to review this finding of facts.

It is broadly contended by the appellee that where there is evidence to sustain the findings of the board, such findings are conclusive, even though the testimony may be conflicting, and though the court may be of the opinion that if it had the case before it *de novo* it might decide the other way. As this is the first case in which this question has been

---

[1] Reported in T. D. 30776 (19 Treas. Dec., 783).

discussed by this court, it is proper to refer to the statute upon the subject. Subsection 29 of section 28 of the act of August 5, 1909, provides:

* * * If the importer, owner, consignee, or agent of any imported merchandise, or the collector or Secretary of the Treasury, shall be dissatisfied with the decision of the Board of General Appraisers as to the construction of the law and the facts respecting the classification of such merchandise and the rate of duty imposed thereon under such classification, or with any other appealable decision of said board, they, or either of them, may, within sixty days next after the entry of such decree or judgment, and not afterwards, apply to the Court of Customs Appeals for a review of the questions of law and fact involved in such decision: * * * Such application shall be made by filing in the office of the clerk of said court a concise statement of errors of law and fact complained of, and a copy of such statement shall be served on the collector, or on the importer, owner, consignee, or agent, as the case may be. Thereupon the court shall immediately order the Board of General Appraisers to transmit to said court the record and evidence taken by them, together with the certified statement of the facts involved in the case and their decision thereon; and all the evidence taken by and before said board shall be competent evidence before said Court of Customs Appeals. * * *

Said Court of Customs Appeals shall have power to review any decision or matter within its jurisdiction and may affirm, modify, or reverse the same and remand the case with such orders as may seem to it proper in the premises, which shall be executed accordingly.

A careful reading of this statute satisfies us that it was the intent of Congress that this court should have the power to review questions of fact. The circumstance that all the evidence before the board is competent evidence and that all is required to be returned to this court indicates that such was the intent.

We think the proper practice is analogous to that which obtains on appeals in equity cases in the State or Federal courts. That rule has been stated in various ways in the different courts, but the courts all recognize the better opportunities of a trial court to judge of the credibility of witnesses, and hesitate for this reason to disturb the conclusion except in a case where the evidence is clearly inconsistent with the conclusion reached by the trial court. The rule as stated in the Blankensteyn case (56 Fed. Rep., 474) is as follows:

The circuit court should not undertake to disturb the findings of the board upon doubtful questions of fact, and especially as to questions of fact which turn upon the intelligence and credibility of witnesses who have been produced before the board. But when the finding of fact is wholly without evidence to support it, or when it is clearly contrary to the weight of evidence, it is the duty of the circuit court to disregard it.

We think this a fair and correct statement of the rule which should govern us under the organic statute above quoted.

This leads us to the inquiry as to whether the conclusion of the board in this case is clearly against the weight of evidence. We have not been able to satisfy ourselves that the Government has presented such a case. An importation somewhat similar, described as "gray

blue," was under consideration in G. A. 6636 (T. D. 28294). In that case the importation consisted of a pigment containing ultramarine blue, but of pale-blue tint and not possessing the strength of ordinary commercial ultramarine blue. It was held not to be the ultramarine blue of commerce, and not dutiable as such, but dutiable as a pigment under paragraph 58, as held in the present case.

It is sought by the Government to distinguish this case. Among the witnesses called to sustain the claim that this article was ultramarine blue was a chemist who was likewise a witness in the former case and who in that case declared that to be ultramarine blue. A number of dealers in ultramarine blue were called who expressed in a way the belief that this was ultramarine blue. But it is noticeable that they were not able to give a dividing line between what would be considered commercial ultramarine blue and what would not. One witness was asked:

Q. Suppose it contained 20 per cent of ultramarine and 80 per cent gypsum, would it be a commercial delivery for ultramarine?—A. Frankly, I don't know, sir, until I saw the test made.

Q. Is there any line that you are willing to draw here as representing the place where an article containing ultramarine and gypsum——A. Only?

Q. Well, with the other slight percentages testified to in this case; you heard the analysis; is there any line you are willing to state where a thing ceases to be, commercially, ultramarine by reason of the smallness of the ultramarine, or where it begins to be ultramarine by reason of the quantity of ultramarine contained therein?—A. No, sir; I couldn't say that.

Q. .Now, taking an article containing 20 per cent of ultramarine and gypsum and practically the proportions of the other materials as here testified to, what would determine whether that was an ultramarine or not in commerce, if the percentage of ultramarine were not the determining factor?—A. The use to which it would be put.

Q. Oh, then it's the use that determines whether an article be ultramarine or not?—A. I don't know as I could answer that until I saw the tests out here. It's impossible for me to answer yes or no.

This witness also testified that he had not in recent years found any ultramarine blue which contained aniline colors. It is undisputed in the present case that this article did contain a small percentage of aniline.

From the cross-examination of this witness, we are satisfied that the article in question would not have been accepted by the trade as a good delivery of ultramarine blue under contract. The facts, as we gather from the record, are that this importation contained. a percentage of ultramarine blue, as one chemist testified, of about 26 per cent; that it also contained aniline dye. It is probable that the percentage is somewhat larger in this importation than in that considered in the case above referred to. But it is also apparent that the color was supplemented by the small percentage of aniline dye contained.

The report of the analysis made by Mr. Berry, a witness called for the Government, was as follows:

Ignited........................Light-blue gray.
Alcohol........................Dissolves a blue coal-tar color.
Hydrochloric acid..............Decomposed, odor of $H_2S$.   Solution blue.
Composition....................Chiefly carbonate and sulphate of lime with a small
                                amount of ultramarine; colored with blue dye.

The importer in this case, who seems to have been the only one who testified who actually made use of this article in his trade, testified that this article imported is not ultramarine blue; that it was not sold as such, but was purchased and sold under a different name. His testimony is that the price of ultramarine blue abroad varies from 5 cents to 20 cents a pound, and that the price of the article here under consideration is between $2\frac{1}{2}$ and 3 cents a pound; that this was used as a substitute for ultramarine blue, and was imported to sell to the paper and paint trade as a substitute for ultramarine blue.

As before stated, the Board of General Appraisers, with all the witnesses before them, and with a better opportunity to judge their testimony than is afforded us, found the facts as contended for by the importer. The testimony amply supports that finding, and we do not feel justified in disturbing it.

The decision of the Board of General Appraisers is *affirmed*.