CIBA CO. (INC.) *v.* UNITED STATES (No. 2633)

1. ADDITIONAL DUTIES—PETITION UNDER SECTION 489, TARIFF ACT OF 1922—
   BOARD'S DECISION.

   On the hearing by the Board of United States General Appraisers of a petition, under section 489, Tariff Act of 1922, for the remission of additional duties, "both the importer and the Government are entitled to a finding either that there was no intent to defraud or that the importer did not sustain his burden that there was no such intent." *United States* v. *Fish,* 268 U. S. 607.

2. SAME—MEASURE OF PROOF.

   The judgment of the Board of United States General Appraisers on a petition filed under section 489, Tariff Act of 1922, for remission of additional duty will be reviewed in this court under the rule laid down in *United States* v. *Riebe,* 1 Ct. Cust. Appls. 19, that, when a finding of fact is without evidence to support it, or when it is clearly contrary to the weight of the evidence, it will be reversed. *Fish & Co.* v. *United States,* 12 Ct. Cust. Appls. 307.

3. SAME—SUFFICIENCY OF EVIDENCE.

   Where it was shown that importer directed his brokers to enter merchandise at a value which coincided with the appraisement, and the brokers, misunderstanding the instruction, entered it at a lower value, the petition for remission of additional duties under section 489, Tariff Act of 1922, should have been granted.

---

¹ T. D 41215

United States Court of Customs Appeals, November 21, 1925

APPEAL from Board of United States General Appraisers, Abstract 49146

[Reversed.]

*Allan R. Brown* for appellant.

*William W. Hoppin,* Assistant Attorney General (*John G. Lerch* and *Jerome G. Clifford,* special attorneys, of counsel), for the United States.

[Oral argument Oct 6, 1925, by Mr. Brown and Mr. Lerch]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

This is an appeal by the importer from the denial by the Board of General Appraisers of its petition thereto for the remission of additional duties under the provisions of section 489 of the Tariff Act of 1922.

We quote so much of that section as is material to the disposition of this case:

* * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a manifest clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the Board of General Appraisers, upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

The appellant is a corporation.

The imported merchandise arrived at the port of New York, June 12, 1923, and was entered July 6 following. Attached to the invoice is a letter of instructions from the importer dated July 3, 1923, to its customhouse brokers, Alpers & Mott, who made the entry, directing them how it should be entered.

The case here involves the additional duties paid on only two of the items entered, one described as five casks of naphthol with a descriptive letter designation; the other, as 10 casks of naphthol with a different letter designation, but, as no question arises because of such different descriptions, the two items will be regarded as one.

The letter of July 3 directed the brokers to enter the merchandise at the United States value of $4.25 per pound which gave a dutiable value of $2.25 per pound, and it was so entered. The letter closed with a statement to the effect that the importer was not sure whether the merchandise was competitive or noncompetitive, and, for that reason, suggested that a recall of the entry might be made for the purpose of amending the same. The invoice accompanying this entry showed the cost of the merchandise to be $2.30 per pound.

March 7, 1924, the importer by another letter, directed Alpers & Mott to amend the entry. The direction was as follows:

This is a noncompetitive product and first importation. In accordance with recent understanding of the appraiser, entry should be based on import price of $2.30 per pound. We would sell this lot at $3.35 per pound less 2 per centum at which figure dutiable value basis would be $1.75 at 55 per centum, and 7 cents per pound.

The brokers, after receiving this letter, amended the entry by entering the merchandise at the United States value of $1.75 per pound. The examiner thereafter advisorily appraised it at $2.30 per pound. This appraisal was adopted by the appraiser. The assessment of additional duties resulted, followed by the petition for remission.

When the petition came on for hearing before the board, importer called Miss Connor, its secretary. She testified in substance that she had charge of making the entry in question; that she dictated and signed the letter of March 7; that it was her intention to direct in that letter that the entry should be amended to $2.30 per pound, based on the import price; that the foreign market value of the napthol was that price and was the price paid for the same; that she wrote the letter after receiving information from Mr. Mitchell, importer's sales manager, who told her he had had an interview concerning the matter with Mr. Wolf, a customs examiner; that importer had no way of finding out whether the merchandise was competitive or noncompetitive until the appraiser had passed on it; that the $3.35 per pound named in the letter was the absolute cost of the napthol landed without any profit; that, after the original entry was made, importer found the naphthol was not selling at $4.25 per pound named in the original entry; that, at the time of hearing before the Board of General Appraisers, the naphthol had not been sold and that the reason she fixed in the letter the price of $3.35 for which they were willing to sell it, was because it had not been sold and because the appraiser had asked for information on that subject.

Mr. Mitchell, the sales manager, called by importer as a witness, testified that this was the first importation of this kind of naphthol made by the importer; that he visited the appraiser's stores in New York about the 1st of March, 1924, and there had a conference with Mr. Wolf, the examiner, with reference to the importation.

We reproduce the relevant part of his testimony relating to that interview:

A. I saw Mr. Wolf and explained to him that since making our entry we found that the price at which we offered the goods at was too high; that we couldn't dispose of them at that price. He then suggested, seeing that we had no sales, only offers, that we enter them at the invoice price, the price for which we paid for them

and to also include in the letter for the amendment the price at which we would be willing to sell the goods.

Q. You mean at that time?—A. At that time.

Q. Was there anything said as to whether the article was competitive or not?— A. No; the article was not competitive.

Q. How do you know that?—A. Because we had a report from the appraiser.

Q. And he then instructed you that he would appraise them on the invoice price?—A. On the invoice price.

Q. And requested you to state in the amendment the price you were then willing to sell them at?—A. That is right.

Q. And after that you saw Miss Connor, the previous witness?—A. I did.

Q. Did you tell her the result of the interview?—A. Exactly what I have said now.

The attention of Mr. Wolf, who was called as a witness by the importer, was directed to this conversation, and he was asked if he remembered the same. His answer was:

I have had so many conversations with him that I do not recall this.

The examiner also testified, in substance, that he had the invoice and the two foregoing letters before him when he made the advisory appraisement at $2.30 per pound; that he accepted the price stated in the invoice as the dutiable value; that his record showed no prior shipments of such merchandise; that he did not think there had been any such prior shipments; that he made his return on the invoice after receiving a report from the laboratory as to this particular dye and as to its sale in the United States market. He first said that the basis of his appraisal was the United States value, but when his attention was called to the figures, agreed that it was appraised at the invoice or purchase price, as evidently it was.

Mr. Mott, a member of Alpers & Mott, the customs brokers in the case, testified that he attended to the making of the original and the amended entries; that he amended the entry according to his interpretation of the instructions contained in the importer's letter of March 7; that he supposed his firm made all the entries for the importer; and that they tried to comply with the law in making them.

The Government called no witnesses.

It is rather difficult to learn from its opinion in the case, as contained in the record, upon what theory the board dismissed the petition. It seems to regard the direction in the letter of March 7 as to amending the entry as ambiguous or conflicting. It states that there was nothing to justify the entry on any other than the foreign market value and seems to criticize both the importer and appraiser for considering the United States value because the merchandise was noncompetitive, and concludes that there was no excuse for the importer for entering the naphthol on any other basis than the foreign value for home consumption or for export, whichever was the higher.

The only definite finding, if it be such, that the board made is contained in the final paragraph of its opinion, which we quote:

We have had the benefit of seeing and hearing the witnesses and considering the case as presented from every angle, and we are led to say that we do not believe that on the record a finding that the additional duties which resulted from the advance over the entered value could be justified under the provision of section 489, supra, and the petition is therefore denied.

A careful reading of the quoted paragraph of the opinion shows that it is at least ambiguous and uncertain. The statement therein, "that we do not believe that on the record a finding that the additional duties which resulted from the advance over the entered value could be justified under the provision of section 489," might be construed as meaning that there was no justification for assessing additional duties, but evidently that is not what the board meant, in view of its denial of the petition.

In *United States* v. *Fish*, 268 U. S. 607, the Supreme Court of the United States, speaking of section 489, said:

The issue to be found by the board was whether the importer showed by his evidence that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The issue presented to the board was, "Has the importer sustained the negative in this regard?" Merely to find that the importer was careless is not a finding sufficient to justify the board in deciding whether there should be a remission. Both the importer and the Government are entitled to a finding either that there was no intent to defraud or that the importer did not sustain his burden that there was no such intent.

We do not think the finding of the Board of General Appraisers in this case satisfies the statute as thus interpreted, and for that reason alone the judgment below ought to be reversed.

If, however, it could be held otherwise, we would, nevertheless, reverse the same as clearly contrary to the weight of the evidence.

In' *Fish & Co.* v. *United States*, 12 Ct. Cust. Appls. 307, the rule was distinctly announced that, in cases of this character, we would adopt the rule laid down in *United States* v. *Riebe*, 1 Ct. Cust. Appls. 19. that, when a finding of fact made by the Board of General Appraisers was without evidence to support it, or when it was clearly contrary to the weight of the evidence, such finding would be reversed.

It clearly appears from the evidence hereinbefore recited, that the importer did not intend to enter the naphthol at $1.75 per pound but did intend, and did plainly direct its brokers, to make the amended entry of $2.30 per pound; and a careful reading by the brokers of the letter of March 7 would have, if they obeyed the instructions of their principal, led them to so enter it. There is no evidence what-

ever that the brokers intended to enter it other than as directed. They simply misinterpreted the directions as to amending the entry, and such misinterpretation alone can not bar importer from remission, provided the record shows that it has sustained the burden imposed upon it by paragraph 489.

The significant and controlling facts are that the invoice stated the purchase price of the naphthol to be $2.30 per pound. The testimony shows without dispute that that was what it cost and was its foreign market value. The letter of March 7 directed the entry to be made at that value. The appraiser, presumably after investigation, appraised it at that figure as its unit foreign market value and at the time had before him the invoice with the two letters from the importer to its brokers thereto attached. Nothing was concealed or misrepresented and no deceit attempted. If the entry had been amended as the importer intended and directed, no additional duties would have been assessed.

We conclude, on the entire record before us, that the importer has clearly established by the evidence that it was not guilty of an intent to defraud the revenue of the United States or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise, and was entitled to that finding by the Board of General Appraisers.

The result is that the judgment below is *reversed* and the cause *remanded* for further proceedings not inconsistent herewith.