UNITED STATES v. TROPICAL CRAFT CORP., SUCCESSORS TO TROPICAL CRAFT IMPORT & EXPORT CORP. (No. 4814)[1]

---

[1] C.A.D. 598.

United States Court of Customs and Patent Appeals, June 15, 1955

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

*Jordan & Klingaman* (*Edward F. Jordan* and *J. L. Klingaman* of counsel) for appellee.

[Oral argument October 15, 1954, by Mr. FitzGibbon and Mr. Jordan; reargued April 6, 1955, by Mr. FitzGibbon and Mr. Jordan]

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and JACKSON (retired), Associate Judges [original argument before O'CONNELL, Acting Chief Judge, and JOHNSON and WORLEY, Associate Judges]

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, entered pursuant to its decision, C. D. 1589, sustaining the protests filed by appellee against the classification made by the Collector of Customs on four importations of generally similar types of footwear from Haiti.

The Collector of Customs classified the imported footwear under paragraph 1530 (e) of the Tariff Act of 1930, and assessed a duty of 35 per centum ad valorem. The pertinent portion of the statute on which the Customs Collector relied is:

Par. 1530 (e) * * *; boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes of any of the foregoing, whether or not the soles are composed of leather, wood, or other materials, 35 per centum ad valorem.

The importer, in his protests, claimed that the imported footwear should have been classified under paragraph 1530 (e) of the Tariff Act of 1930 as modified by the Trade Agreement with Argentina, T. D. 50504, and therefore dutiable at 17½ per centum ad valorem. The pertinent portion of the Trade Agreement with Argentina which modifies paragraph 1530 (e) is:

Footwear known as alpargatas, the uppers of which are composed wholly or in chief value of cotton or other vegetable fiber, and with soles composed wholly or in chief value of vegetable fiber other than cotton_____17½% ad valorem.

Representative items of the imported footwear were received in evidence as appellee's Exhibits 1, 2, 3, and 4. These exhibits are very adequately described in the decision of the Customs Court. This portion of the decision is quoted below:

* * * An examination of each of these exhibits shows them to be ladies' footwear. The bottom part of each item, or what was referred to by counsel for both sides as the sole, is flat from toe to heel, except for a small piece of leather, one-eighth of an inch thick, attached at the heel. A wooden wedge extending from about the midpoint to the heel is attached to the upper part of the sole in such manner as to elevate the heel of the wearer above the floor about 2 inches more tha . the height at the ball of the foot. There is a cloth or fabric insole extending from toe to heel.

The bottom part of the articles is composed of twisted, braided, or plaited fiber, so shaped and coiled and fastened as to form a sole. The uppers are composed of braided fiber secured at the forepart of the article between the inner and outer soles and forming an "open toe" instep covering. The articles are held to the foot by means of a braided fiber strap secured under the insole at the forepart of the heel and carried around to form a "sling back." The wooden wedge and the outer part of the sole are covered with braided fiber, and the uppers and straps are lined with what appears to be cotton fabric.

Counsel for the respective parties have stipulated that the merchandise represented by the samples in question is footwear, the uppers of which are composed in chief value of sisal, a vegetable fiber; that the soles, exclusive of the wooden wedges, are also composed in chief value of sisal; and that the articles, as entireties, are composed in chief value of sisal.

The Customs Court sustained appellee's protests and found. the imported footwear to be alpargatas dutiable at 17½ per centum ad valorem under the Trade Agreement with Argentina, *supra.*

The Government has appealed from the judgment of the Customs Court, and contends that the classification of the Collector of Customs is correct.

The issue before us on appeal is whether the imported footwear is dutiable at 35 per centum ad valorem under paragraph 1530 (e), *supra,* as contended by the Government, or whether the imported

footwear consists of alpargatas and is therefore dutiable at 17½ per centum ad valorem under paragraph 1530 (e) as modified by the Trade Agreement with Argentina, *supra*, as found by the Customs Court.

Both parties included the following definitions of alpargatas in their briefs:

*Funk & Wagnalls New Standard Dictionary*, 1931, 1939, 1942, 1945 Editions:

*Alpargata*, n. (Sp.)—A sandal-like shoe having a sole of plaited hemp or rush, worn by the Chinese, and by the Spanish peasants and Filipinos.

*Webster's New International Dictionary*, 1934, 1936, 1941, 1948, 1951 Editions:

*Alpargata*, n. (Sp.)—A kind of sandal usually made of hemp.

In addition, appellee cited the following definitions:

*Sloane's Neuman and Baretti's Spanish Pronouncing Dictionary*—By Velazquez D. (Appleton & Co. 1899)

*Alpargata*—A sort of shoes or sandals made of hemp.

*Diccionario Ingles-Espanol y Espanol-Ingles Garnier Hermanos*, Paris Editors

*Alpargata*—A sort of shoes or sandals made of hemp.

In an attempt to more fully ascertain the true meaning of the term alpargatas, which are defined as a type of sandal, both parties cited the following definitions of the term sandal in their briefs:

*Funk & Wagnalls New Standard Dictionary*—1931, 1939, 1942, 1945 Editions:

*Sandal*, n. 1. A kind of shoe, consisting usually of a sole only but sometimes with a shield for the heel and a cap for the toes held to the foot by thongs, cords, etc.
2. A light fancy slipper often embroidered.

*Webster's New International Dictionary*—1936, 1941, 1948, 1951 Editions:

*Sandal*, n. 1. A kind of shoe consisting of a sole strapped to the foot; a protection for the foot, covering its lower surface only.
2. A fancy slipper sometimes containing open work in the vamps and quarters.

Relative to the above definitions, the Government in essence contends that a sandal is of light weight and with a flat sole, and that since the imported footwear has a wedge heel it does not come within the common understanding of the term sandal and therefore cannot be classified as alpargatas.

The appellee, on the other hand, was successful in convincing the Customs Court that the imported footwear came under the above-cited definitions. In this respect, the pertinent portions of the Customs Court's decision are quoted below:

It may very well be that a basic sandal consists of a sole only, strapped to the foot by thongs or cords. However, it is clear that the term is a very broad one, as is indicated by Webster's second definition and the Funk & Wagnalls definition above cited. Moreover, it would appear that the term "alpargatas" is not limited to the basic rope-soled sandal, for the Funk & Wagnalls definition of "alpargata" calls it "a sandal-*like* shoe," indicating that while it may embody some of the characteristics of a sandal, it may differ in other respects.

\* \* \* \* \* \* \*

The thought which the term "sandal" connotes is of a flat-bottomed article of footwear, exhibiting little or no arch on the underside, having an upper in a more or less modified sense of the term, and held to the foot by straps or the like. The articles at bar, represented by plaintiff's collective exhibits 1, 2, and 3, and plaintiff's exhibit 4, have these characteristics. *The use of the wooden wedge to elevate the heel of the wearer is quite obviously an improvement bringing the basic alpargata more in line with typical current or modern shoe design.* (Italics added.)

We are of the opinion that the decision of the Customs Court cannot be sustained.

We have reviewed the record of this case, and have found that the evidence which was submitted on behalf of the importer was for the most part in the nature of oral testimony. The witnesses in essence stated that the chief characteristic of an alpargata is a rope sole, but that the upper can consist of almost any material. There was also testimony given to the effect that the wooden wedge does not destroy the identity of an alpargata. Neither party contended that the term alpargatas has a commercial meaning which differs from the common meaning. Thus there is no question of commercial designation and the words must be construed according to their common meaning. *Ringk & Co.* v. *United States*, 10 Ct. Cust. Appls. 107.

It was settled at an early date that this court may review questions of fact. *United States* v. *Riebe*, 1 Ct. Cust. Appls. 19. It is equally well settled that the courts, in determining the common meaning of a term may accept or reject evidence of such meaning and may, as an aid, consult the dictionaries, lexicons, and written authorities as to such common meaning. *United States* v. *A. Moscini*, 19 C. C. P. A. (Customs) 144; *Savannah Sugar Refining Corp.* v. *United States*, 20 C. C. P. A. (Customs) 272. Furthermore, while opinions of witnesses as to the common meaning to be attached to a word are proper to be considered, and in some cases given much weight, the usual rule is to consult standard lexicographers to determine the common meaning of statutory words. *United States* v. *Crosse & Blackwell, Inc.*, 22 C. C. P. A. (Customs) 214.

Under the authority of the above-cited cases, we feel that the testimony, which was submitted relative to the meaning of the term alpargata, should have been rejected by the Customs Court since it appears contrary to the definitions given in the cited authoritative sources. The dictionaries define an alpargata as being a "sandal-like shoe" and a "kind of sandal." The term "sandal" is in turn defined as "a kind of shoe consisting usually of a sole only but sometimes with a shield for the heel and a cap for the toes * * *" and "a kind of shoe consisting of a sole strapped to the foot * * *." These sources do not specify that a sandal has a heel. A review of the record discloses that appellee, who had the burden below of proving that the Customs Collector was in error, cited no authoritative written sources which showed that a sandal could have a "wedge"

heel. Our own research to additional authoritative sources[1] has failed to disclose a definition of a sandal which includes a wedge heel. It would seem improper to read a wedge heel into the above definitions of sandals since these definitions make no mention of it, but, on the contrary, specify that sandals consist of a "sole only" or "a sole strapped to the foot." Furthermore, since the definitions of "sandals" specify certain features which are exceptions to the general meaning, but are within the definition of a sandal, e. g. "a shield for the heel and a cap for the toes" etc., it would certainly seem that they would also specify the presence of a heel if this feature were considered as being within the definition.

We are therefore of the opinion that since an alpargata is defined as a "kind of sandal" and a "sandal-like shoe," and since the imported merchandise does not fall within the above-cited definitions of sandals because of the presence of a wooden wedge heel, that the imported footwear cannot be considered alpargatas. We therefore feel that the Customs Court was in error in overruling the Customs Collector's classification, and stating that the "use of the wooden wedge is quite obviously an improvement bringing the basic alpargata in line with typical current or modern shoe design." It is our opinion that the trade agreement does not provide for modified basic alpargatas, but for footwear which has no heel but which does have the other characteristics of alpargatas enumerated in the trade agreement.

For the foregoing reasons, we feel that the decision of the Customs Court should be *reversed*.

WORLEY, Judge, dissenting.

I agree with the reasoning and conclusion of the Customs Court and would affirm.

GARRETT, Chief Judge, did not participate in the hearing or decision of this case because of illness.

COLE, Judge, having participated below, disqualified himself from sitting in this case.

JACKSON, Judge, Retired, sat for GARRETT, Chief Judge, on rehearing.

---

[1] *The Columbia Encyclopedia*, Columbia University Press, Morningside Heights, New York, 1950.
*The Century Dictionary and Cyclopedia*, Vol. VIII, The Century Co., New York, 1911.