ABERCROMBIE & FITCH COMPANY *v.* UNITED STATES (No. 5086)*

United States Court of Customs and Patent Appeals,
September 21, 1962

*Allerton deC. Tompkins* for appellant.

*William H. Orrick, Jr.,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Richard H. Welsh,* and *Mollie Strum,* trial attorneys, of counsel) for the United States.

[Oral argument February 8, 1962, by Mr. Tompkins and Mr. Welsh]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK [1]

---

*C.A.D. 808.

[1] *United States Senior District Judge for the Eastern District of Pennsylvania,* designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

RICH, Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, First Division, C.D. 2257, overruling the importer's protest and ▮▮▮ sustaining the collector's classification of the imported merchandise under paragraph 1518 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to GATT, T.D. 52373, and T.D. 52476, at the rate of 37½ per centum ad valorem.[2]

The Customs Court opinion described the imported merchandise and its creator as follows:

The samples in evidence (plaintiff's exhibit 1 and plaintiff's illustrative exhibit 2) consist of articles invoiced as "Original Miniatures," each miniature being an original small wooden framed wall hanging *having the general appearance of a painting*. These framed articles are about 15 inches in circumference and approximately 5 inches in diameter. The framed inserts consist of a flowerlike decorated cardboard background on which is imposed figures of small birds and also natural substances, such as grasses, leaves, stems, branches, etc., all of which framed articles, it appears, have been arranged and decorated *by an artist* to represent birds, flowers, etc., in a natural setting. [Emphasis ours.]

The plaintiff introduced in evidence by way of deposition (plaintiff's exhibit 3) the testimony of Hamilton Elliott Hervey who described himself as a "Miniature artist" for 10 years, specializing in 3-dimensional miniatures of animals and birds. He stated that for 5 or 6 years he has been a member of The Royal Society of Miniature Painters, Sculptors, and Engravers, whose purpose is to foster miniature painting. In this connection, Mr. Hervey testified that he had held three one-man shows of his own work and that he annually exhibits at the aforesaid Royal Miniature Society. The witness further stated that he had produced the items at bar, all of the materials having been personally purchased by him; that the materials used in making these items were water colors, natural vegetable materials, glues, etc.; and that all of the items in question had wood frames, convex glass, background cards, vegetable or feather materials, and, also, with the exception of "the 18 miniatures at $5.00 each," had cardboard mounts inside the frames. He then enumerated the various production costs and the length of time employed by him in setting up each of the items or materials which make up the involved articles.[3]

---

[2] The pertinent provisions of paragraph 1518, as amended, read:

Natural grasses, grains, leaves, plants, shrubs, herbs, trees, and parts thereof, not specially provided for: * * * When colored, dyed, painted or chemically treated * * * and all articles not specially provided for, composed wholly or in chief value of natural grasses, grains, leaves, or other material mentioned in the preceding item: * * * If the component material of chief value is colored, dyed, painted, or chemically treated_____ 37½% ad val.

[3] Plaintiff's exhibit 4 discloses the following to be the approximate costs in a 5" diameter "Miniature":

| | |
|---|---|
| 5" frame | 2s, 0d. |
| convex glass | 8d. |
| cardboard mount | 9d. |
| card | 1d. |
| materials for birds, flowers, scenery, etc., i.e., the vegetable materials | 6d. |
| paints, sprays, adhesives, etc. | 3d. |
| 40 minutes labor on animals before fixture to background at 1£/hr. | ⅔£ |
| 1 hour 20 minutes labor after animals are fixed to background at 1£/hr. | 1⅓£ |

Mr. Hervey described the production of these miniatures as follows:

\* \* \* Painting the water colour picture which forms the background to the miniature, making the animals and birds from vegetable materials, and assembling the various items on to the background. None of these items is completed as a separate item. The water colour background is carried to a certain point, and the birds, animals, flowers, etc., are in an approximate form before being assembled on the background, but all the items, including the painting, are completed after all the items are on the background itself, after which the completed picture is framed.

We think it manifest that the value of the merchandise at bar is based predominantly on the value imparted thereto by the skill, artistic ability and professional reputation of its creator. It would appear that approximately ¾ of the costs involved in making the instant "Miniatures" is attributable to the value placed on Mr. Hervey's ability in creating them.[4]

We, therefore, find appellant's proof convincing that the collector's classification of the imported merchandise was incorrect. However, before appellant's protest can be sustained, he must also prove that the classification he asserts is correct.

Appellant's protest makes a number of claims. The position we take in this case, however, makes it unnecessary to discuss any claim except that under paragraph 1547(a) of the Tariff Act of 1930 as modified by GATT, T.D. 51802, under which appellant claims the merchandise is classifiable as works of art, n.s.p.f., at the rate of 10 per centum ad valorem.

The court below, in holding the instant merchandise not to be properly classifiable under paragraph 1547(a) as amended, cited in support of its position thirteen decisions; one from the Supreme Court rendered under the Tariff Act of 1890, and the remainder from this court and lower courts. All but one, which we will mention, infra, were decided under the Tariff Acts of 1922, 1913 or earlier acts. No discussion was undertaken by the court below of this court's latest decision dealing with paragraph 1547(a), *Wm. S. Pitcairn Corp.* v. *United States*, 39 CCPA 15, C.A.D. 458.

The essence of the court's opinion below on this point can be gathered from the following statements:

In our opinion, the articles here involved are not properly classifiable under paragraph 1547(a) of the Tariff Act of 1930 under the provision therein for "works of art." Everything that is ornamental or decorative cannot be classified or embraced within the tariff provision for "works of art." The articles here, while undoubtedly decorative, do not conform to those productions of an artist

---

[4] See in this regard, *Tiffany* v. *United States,* 66 Fed. 736 (C.C.S.D.N.Y. 1895), wherein fans of silk and other materials were held dutiable as paintings and not as manufactures of silk since "at least two-thirds of the value is imparted to the fans by the skill, genius and reputation of the artist."

which over the years have been considered, by reason of their beauty and artistic character, to be works of art.

As to the nature of those "works of art" which in its opinion *are* classifiable under paragraph 1547(a), the court said:

\* \* \* the provisions of paragraph 1547(a) of the act of 1930, \* \* \* apply only to the works of free fine arts, as distinguished from decorative and industrial art, \* \* \*.

That paragraph 1547(a) of the 1930 Tariff Act is not to be limited to the "free fine arts," we think was settled by this court's opinion in the *Pitcairn* case, supra. In that case, this court held that ▮ a rule of classification which may apply under a different paragraph of the Tariff Act to "the free fine arts does not exist in the case of the *commercial products covered by paragraph 1547(a).*" (Emphasis ours.) The Government in the case at bar would have us limit this language in the *Pitcairn* case because:

That case involved the question of congressional intent to include forms of statuary and sculpture, and copies, replicas or reproductions of same under paragraph 1547(a). The merchandise in the case at bar does not fall within that subject matter.

We are not persuaded by this argument of the Government. In the *Pitcairn* case, this court analyzed in some length the statutory antecedents of paragraph 1547(a) in seeking to determine what the phrase "works of art" meant *in that paragraph*. This court in the *Pitcairn* case considered the entirely new provision in paragraph 1547(a)(2) for "works of art" "valued at not less than $2.50," to be an indication of a broader feeling "that the Congress which passed the 1930 Act evidently felt that there are, at least for tariff purposes, works of art, *including* statuary and sculptures, which are of low value so far as dollars and cents are concerned." (Emphasis ours.) We note that this same conclusion was reached by the First Division of the Customs Court itself, prior to its decision in the instant case, as appears from its following statements in the case of *Ebeling and Reuss Co.* v. *United States*, 40 Cust. Ct. 387, 394, C.D. 2009:

The effect of the *Pitcairn* case was to overrule earlier cases, including the *Adelaide Ehrich* case and those cited therein, which limited the provision for works of art, in *paragraph 1547* and its predecessors, to works of the free fine arts. Under the *Pitcairn* case, the provisions of *paragraph 1547*, as originally enacted and as amended, have been extended to include articles of common commerce, possessing beauty and not created for utility, *such as* the objects involved herein. [Emphasis other than in case names ours.] [5]

---

[5] The *Adelaide Ehrich* case mentioned by the Customs Court in the above quote (*United States* v. *Mrs. Adelaide Ehrich*, 22 CCPA 1, T.D. 47019), is the sole case, as previously noted, decided under the 1930 Act which the Customs Court cited to support its judgment below. This case was not expressly mentioned in the *Pitcairn* opinion, but was cited by the Government in its *Pitcairn* appeal brief.

In conclusion, therefore, with respect to the *Pitcairn* case, we state that its analysis of the statutory and case law pertaining to paragraph 1547(a) in the 1930 Act and its predecessors is convincing that the "works of art" provision of *this paragraph* should not be limited to include only works of the free fine arts. We have considered all of the cases cited by the court below and by the Government and are of the opinion that *insofar as paragraph 1547(a) is concerned*, the position of the court below, and the Government in this court, that this paragraph applies only to the works of the free fine arts, to use words from the *Pitcairn* case, "If supported at all, it is supported by mistaken precedents only, and it has been asserted frequently that a mistake of yesterday should not be perpetuated and thus continue to be the law of today and tomorrow." *Wm. S. Pitcairn Corp.* v. *United States*, *supra*, at page 34.

As to the goods before us, we find that the imported miniatures possess a considerable amount of "beauty and artistic character." No allegation has been made that the goods are articles of utility. It seems obvious that the sole appeal the instant imports possess is an aesthetic one. Under these circumstances, and as the original works of an artist, we think that the instant goods are properly classifiable as "works of art" under paragraph 1547(a). The Customs Court and the Government, however, point out with some emphasis that:

* * * plaintiff's witness who prepared the miniature representations of the flowers, birds, and buds here under consideration had "not attended an art school of any sort," and we cannot say, in view of his related background, that his testimony to the effect that the involved items are works of art is sufficiently persuasive to compel a finding that the importation at bar is properly classifiable as such.

We find this argument singularly unpersuasive if not logically unsound because the formal training of an artist is logically irrelevant to the ability *of an admitted artist* to judge the existence of non-existence of an artistic work. We may add that it is similarly irrelevant to the aesthetic quality the artist's work may have. Clearly, if art school training were the test, the works of several of the world's most renowned self-taught artists, as well as those who revolted from all they were taught in "art school," could not be considered "works of art." The record establishes that the goods before us are the works of a creative artist.

The judgment of the Customs Court is *reversed*.

———

WORLEY, Chief Judge, dissenting.

This court should not reverse judgments of the Customs Court in the absence of clear reversible error. There is no error, reversible or

other, in the very thorough fashion in which the Customs Court considered and disposed of the various arguments advanced by the importer.

To secure a better picture of the facts and issues, particularly with respect to the importer's position, it is necessary to go into more detail than does the majority.

The merchandise, invoiced as "Original Miniatures," was classified by the collector under paragraph 1518 of the Tariff Act of 1930 as modified by the Annecy Protocol of Terms of Accession to GATT, T.D. 52373 and T.D. 52476, as articles composed in chief value of natural grasses. The importer protested, claiming classification under Paragraph 1558 of that act as modified by the Torquay Protocol to GATT, T.D. 52739, and T.D. 52827, as nonenumerated manufactured articles or, alternatively, under paragraph 1547(a) of that act as modified by GATT, T.D. 51802 (or by similitude under paragraph 1559, as amended by Public Law 768, 83rd Congress) as works of art, or, finally, under paragraph 412 of that Act, as modified by T.D. 52373 and T.D. 52476, *supra*, as manufactures of wood or bark. The Customs Court overruled the protest.[1]

The paragraphs involved, in pertinent part, follow:
As classified by the collector:

Par. 1518. Natural grasses, grains, leaves, plants, shrubs, herbs, trees, and parts thereof, not specially provided for: * * * When colored, dyed, painted, or chemically treated * * * and all articles not specially provided for, composed wholly or in chief value of natural grasses, grains, leaves, or other material mentioned in the preceding item: * * * If the component material of chief value is colored, dyed, painted, or chemically treated—37½% ad val.

As claimed by the importer:
Primary claim:

Par. 1558. Articles manufactured, in whole or in part, not specially provided for_____ 10% ad val.
Alternative claims:
Portions of Paragraph 1547(a), amended by GATT, read:
Works of art, not specially provided for:
(1) Paintings in oil or water colors, pastels, pen and ink drawings and copies, replicas, or reproductions of any of the same_____ 10% ad val.
(3) Etchings and engravings_____ 10% ad val.
Portion of Paragraph 1547(a) not affected by GATT reads:
Works of art, including * * * (2) statuary, sculptures, or copies, replicas, or reproductions thereof, valued at not less than $2.50 * * * 20 per centum ad valorem.

---

[1] One judge, although agreeing that the importer had not sustained its burden of proof, was of the opinion the decision of this court in *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676, was controlling.

Par. 412, Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for

\* \* \* \* \* \* \*

Other \* \* \*_____ 16⅔% ad val.

The samples in evidence are small ovals with wooden frames, having the general appearance of a painting and which appear to be suitable for hanging on walls. The inserts consist of a painted cardboard background on which is attached plain or dyed natural substances, such as grasses, grains, seeds, feathers, etc., arranged and decorated to simulate small birds and flowers in a natural setting. Their method of production is described by the maker, a Mr. Hervey, of England, in the following manner:

\* \* \* Painting the water colour picture which forms the background to the miniature, making the animals and birds from vegetable materials, and assembling the various items on to the background. None of these items is completed as a separate item. The water colour background is carried to a certain point, and the birds, animals, flowers, etc., are an approximate form before being assembled on the background, but all the items, including the painting, are completed after all the items are on the background itself, after which the completed picture is framed.

It is, of course, basic in customs law that the collector's classification is presumed to be correct and one who challenges that classification must not only prove the collector's classification wrong, but also prove the claimed classification correct.

The record provides little or no support for appellant's various contentions. Aside from the samples, the only other matters of relevance are the interrogatories and answers by Mr. Hervey, describing how the articles are made and setting out his estimates of the cost of the various items going into the finished product.

The chief argument for the importer's primary claim appears to be that the various components of the article are of little or no value; that the end product is in combining them by virtue of the "skill and artistry of the artist;" and that "There is no provision in the tariff law covering articles in chief value of artistic skill." The importer concludes that "Paragraph 1558 is therefore the tariff provision that should apply."

In disposing of that argument, the Customs Court said:

\* \* \* Paragraph 1518 of the Tariff Act of 1930, as amended, under which the involved merchandise was classified, provides for articles composed wholly or in chief value of "Natural grasses, grains, leaves, plants, shrubs, herbs, trees, and parts thereof." Inasmuch as these are specific provisions covering the tariff classification of the importation in question, the provision in paragraph 1558 of the act for non-enumerated articles is the least specific as applied to the involved items and cannot prevail over the specific provisions of paragraph 1518, supra.

I see no error in that holding. While it may be, as appellant argues, that there "is no provision in the tariff law covering articles in chief value of artistic skill," it can hardly be said that this record supports appellant's conclusion that paragraph 1558 should therefore apply. Appellant cites no authority for such a proposition and I know of none.

In rejecting appellant's first alternative claim for classification under Paragraph 1547(a), the court cited and reviewed a number of decisions [2] including *United States* v. *Perry*, 146 U.S. 71; *United States* v. *Halle Bros. Co.*, 6 Ct. Cust. Appls. 543, T.D. 36196; *United States* v. *Downing & Co.*, 6 Ct. Cust. Appls. 545, T.D. 36197; and *G. W. Sheldon & Co.* v. *United States*, 61 Treas. Dec. 1015, T.D. 45671.

Those decisions do not support appellant's claim for classification as works of art, nor are they challenged or distinguished by appellant, reliance instead being placed on *Wm. S. Pitcairn Corp.* v. *United States*, 39 CCPA 15, C.A.D. 458.

In *Pitcairn* the merchandise was *earthen* and *china figurines* which were molded *reproductions* or *copies* of an original made by a sculptor. This court there held that, even though original sculptures must be the work of professional sculptors to fall under Paragraph 1547(a), *copies* of such sculptures need not be the work of professionals to be similarly classified. That holding has no application to the facts here. In the *Pitcairn* case the court was *particularly* concerned with the congressional intent regarding Paragraph 1547(a)(2) which states:

(2) statuary, sculptures, or copies, replicas, or reproductions thereof, valued at not less than $2.50, * * *.

Appellant is not claiming under the quoted provision but rather under 1547(a) broadly as works of art not specially provided for.

Although I am not disposed to agree with the Government that appellant's claim for classification by similitude under Paragraph 1559 is necessarily "frivolous," I do agree with the Customs Court that

* * * Finding as we do that the merchandise is not classifiable under paragraph 1547(a) of the tariff act as works of art, the claim for classification of the merchandise, by similitude, to works of art is, in our opinion, also untenable.

Appellant's final alternative claim for classification under paragraph 412 as manufactures in chief value of wood was rejected on the

[2] Other cases cited include :
*United States* v. *Hensel, Bruckmann & Lorbacher*, 18 CCPA 297, T.D. 44504; *United States* v. *Hunt Diederich*, 19 CCPA 156, T.D. 45274; *Cassard Romano Co., David A. Haagens* v. *United States*, 19 CCPA 191, T.D. 45294; *O. O. Friedlaender Co.* v. *United States*, 19 CCPA 198, T.D. 45295; *Alexander & Oviatt* v. *United States*, 21 CCPA 97, T.D. 46410; *United States* v. *A. Ackermann & Sons*, 21 CCPA 329, T.D. 46852; *United States* v. *W. X. Huber Co.*, 21 CCPA 567, T.D. 46991; and *United States* v. *Mrs. Adelaide Ehrich*, 22 CCPA 1, T.D. 47019.

ground that appellant had failed to satisfactorily prove the specific costs of the articles, including time and labor, entering into the cost of the article, citing *United States* v. *H. A. Caesar & Co.*, 32 CCPA 142, C.A.D. 299. I find no error in so holding. *United States* v. *Riebe*, 1 Ct. Cust. Appls. 19, T.D. 30776.

While *Pitcairn*, lengthy and pregnant with dicta, as it is, might be cited for other things, it clearly cannot properly serve as the vehicle to overrule a long line of judicial precedents.

The judgment should be affirmed.

---

Kirkpatrick, Judge, dissenting.

I do not question that the importations now before the court possess considerable beauty and artistic character and would, by most people, be called "works of art." However, a reading of the multitude of decisions dealing with the phrase, "works of art," in the various tariff statutes convinces me that the term has acquired a rather narrowly limited meaning. It is not possible to find a decision precisely in point and it is true that in a number of the opinions which discuss the law what is said about the meaning of the term might be properly described as *dicta*. Nevertheless, even if it be so regarded, it expresses the view of the law held by the writers of those opinions and their colleagues and forms at least part of the reasoning which led them to the result reached.[1]

From the consideration of all of the cases dealing with the subject there emerges the following rule. First, an import cannot be classified as a work of art no matter how much artistic merit it possesses if it is merely intended to decorate or beautify some article of a utilitarian character. This appears to be the point of the distinction between *free* fine arts and those "whose object is to create form that shall minister to some utility." *Reardon* v. *United States*, 11 Ct. Cust. Appls. 233, T.D. 38992. This principle would not disqualify the importation now before the court as works of art. However, a further limitation which appears pretty plainly from a reading of the opinions is that "works of art" in a tariff sense refers to the "fine" arts and that "fine arts" means only sculpture, painting, and creation similar to paintings such as drawings, etchings, etc.

Although such a rule excludes many things that people generally would consider works of art, it seems to me that there is no field in

---

[1] I fully realize that *dicta* do not call for the application of the rule, stare decisis, but neither do I feel that they must necessarily be wrong and therefore not to be followed.

The views which learned judges have repeatedly deemed worthy of being recorded in their opinions, whether or not they are *dicta*, ought not to be lightly brushed aside. There seems to be developing a tendency to refuse to follow well considered and oft repeated statements for the sole reason that they could properly be characterized as *dicta*. I consider this unfortunate.

which it is more important to have some fairly rigid standards than in that of artistic importations. One has only to look at the extraordinary techniques which go to the creation of some forms which pass for modern art to realize that without such limitation the field would be practically unlimited, each case depending upon the personal taste of the judge. It seems to me that the limitation discussed above is a satisfactory rule which can and should be followed.